RATTERMAN *v.* WESTERN UNION TELEGRAPH COMPANY.

WESTERN UNION TELEGRAPH COMPANY *v.* RATTERMAN.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION.

Nos. 1360, 1361.   Argued March 21, 1888. — Decided May 14, 1888.

A single tax, assessed under the laws of a State upon receipts of a telegraph company which were partly derived from interstate commerce and partly from commerce within the State, and which were capable of separation but were returned and assessed in gross and without separation or apportionment, is invalid in proportion to the extent that such receipts were derived from interstate commerce, but is otherwise valid; and while a Circuit Court of the United States should enjoin the collection of the tax upon the portion of the receipts derived from interstate com-

merce, it should not interfere with those derived from commerce entirely within the State.

The decisions of this court respecting the taxation of telegraph companies. reviewed.

THE case, as stated by the court, ·was as follows :

These are cross appeals from a decree of the Circuit Court for the Southern District of Ohio, Western Division.

The suit was begun by a bill of complaint, filed by the Western Union Telegraph Company against Frank Ratterman, treasurer of Hamilton County, in the State of Ohio. As the bill ·is not very long, it is here presented in full :

" To the judges of the Circuit Court of the United States for the Southern District of Ohio, Western Division :

" The Western Union Telegraph Company, a corporation duly organized and existing under the laws of the State of New York and a citizen of said State, brings this its bill against Frank Ratterman, treasurer of Hamilton County, Ohio, and a citizen of the State of Ohio.

" And thereupon your orator complains and says:

" That its principal office is, and during the times hereinafter mentioned was, in the city of New York; that during said time it had been and now is engaged in the business of receiving and transmitting for hire telegraph messages between different points in the United States, and in the carrying on of said business has offices in the city of Cincinnati and at other points in the county of Hamilton and in the State of Ohio, and·has been engaged in the transmission of messages between said offices and other points both within and without the State of Ohio.

" That prior to 1869 your orator accepted in writing the provisions of the act of Congress of July 4, 1866, 14 Stat. 221 ; that your orator's wires, poles, batteries, office furniture, and other property in the State of Ohio have been and are taxed like other property in said State; that your orator's telegraph lines cross nearly all of the States of the Union and occupy portions of British America, and that a large amount of the

commercial transactions, business, and intercourse of the people is carried on by means of their wires.

"That in the month of May, 1887, your orator, under protest, delivered to the auditor of said county a statement, as required by Revised Statutes Ohio, § 2778, showing the entire receipts of your orator in said county for the year next preceding, which said gross receipts amounted to the sum of $175,210.88, and were principally for business between points in the State of Ohio and points outside the State of Ohio — that is to say, the receipts of your orator for messages and business pertaining to commerce between the States, and not for messages between different points within the State of Ohio; that thereupon said auditor assessed a tax thereon amounting to five thousand two hundred and six and $\frac{90}{100}$ dollars.

"Your orator says that said tax is illegal and void and in violation of the Constitution of the United States.

"Your orator has offered to the defendant and is ready and willing to pay to him the taxes chargeable against its personal property within said county, but the defendant refuses to accept payment thereof unless your orator also at the same time pays said total assessment for all of said gross receipts; and, unless restrained, the defendant will impose and enforce the penalties for non-payment of said tax provided for by Revised Statutes of Ohio, § 2843, to the interference, stoppage, and destruction of your orator's business.

"Wherefore your orator prays that the defendant may be required to accept payment of so much of said tax assessment as covers the property of your orator in the said county, and that he may be enjoined by preliminary injunction and by final decree from levying or collecting the balance of said assessment.

"Your orator prays that a writ of subpoena may issue against the defendant, and that your orator may have such other and further relief as it is in equity and good conscience entitled to."

To this bill a general demurrer was filed, which was overruled by the court. The record then proceeds as follows:

" And thereupon it was agreed by and between the complainant and the defendant that the cause be submitted to the court on the bill without further pleading to the same by the defendant, upon the following facts :

" That of the entire receipts mentioned in the bill $142,-154.18 were for business done by the plaintiff between its offices in said county and points outside of the State of Ohio — that is, for messages and business pertaining to commerce between the States and not for messages between different points within the State of Ohio, and that the balance of said receipts, to wit, $33,056.70 was for business between the offices of the plaintiff in said county and other points within the State of Ohio; and that if said receipts had been so separated and apportioned and said tax had been separately assessed on the basis of such separation and apportionment the amount of said total tax of $5206.90 apportionable to said receipts for interstate commerce would be $3931.51, and the amount apportionable to said receipts for business between the offices of the complainant in said county and other points within the State of Ohio would have been $910.40, and that the remainder of said sum of $5206.90, viz., $364.99, was for tax assessed upon the personal property of the said complainant within the said county of Hamilton aforesaid, namely, upon its instruments, wires, poles, and other chattel property which were returned by said complainant to the auditor of said county at a valuation of $18,059.

" That Exhibit ' A,' hereto annexed and made a part of this stipulation, is a copy of the return made by complainant to the auditor of said county in pursuance of the law of the State of Ohio, and that said complainant made no other return and furnished no other information to said auditor at the time of said return, save what is contained in said return.

" That Exhibit ' B,' hereto annexed and made a part hereof, is a copy of the return of the chattel property of said complainant made at the same time to said auditor.

" It is further agreed that the auditor of said county placed on the tax duplicate of said county said sums of $175,210.88, and $18,059 as the personal property of said complainant, to

be assessed for taxation in said county of Hamilton, and that the rate of taxation assessed thereupon was the same as was assessed against the personal property listed for taxation by the citizens of said county.

" It is further agreed that complainant, prior to December 20, 1887, offered to pay the tax properly assessable against said return of $18,059 for personal property, but the defendant refused to accept payment of said assessment of $5206.90 unless the whole were paid. The plaintiff did not disclose to said auditor at the time it made said return what portion, if any, of the gross receipts of its said offices in said county was for interstate commerce.

" It is further agreed that neither said auditor nor said treasurer had any actual knowledge that any portion of the returns of said gross receipts was for interstate commerce business, but said officers knew that plaintiff's said business included interstate commerce.

" And the only knowledge said auditor and said treasurer had of the business of said company and what said receipts were derived from was from the returns hereto annexed, marked Exhibit ' A,' and from their knowledge as aforesaid of the plaintiff's business.

" The cause being thus submitted to the court on the foregoing stipulation of facts and the argument of counsel, the court is of the opinion that said receipts and tax may be separated and apportioned, and that said tax so far as so separated and apportioned to said receipts derived from the interstate commerce is unconstitutional and void, but valid apportionable to said receipts derived from state business.

" It is thereupon ordered by the court, adjudged, and decreed that the defendant is hereby forever enjoined from collecting on said assessment of $5206.90 more than the sum of $1275.39, and an injunction is refused as to the balance of said tax. It is further ordered that the defendant pay the costs of this suit."

The judges of the Circuit Court, upon this state of facts, made the following certificate of a difference of opinion :

" This is to certify that at the hearing of the above entitled

cause before Hon. Howell E. Jackson, circuit judge, and George R. Sage, district judge, said judges differed in opinion upon the following question of law, to wit :

" Whether a single tax, assessed under the Revised Statutes of Ohio, § 2778, upon the receipts of a telegraph company, which receipts were derived partly from interstate commerce and partly from commerce within the State, but which were returned and assessed in gross and without separation or apportionment, is wholly invalid, or invalid only in the proportion and to the extent that said receipts were derived from interstate commerce.

" And the district judge being of the opinion that such a tax is wholly invalid, and the circuit judge being of the opinion that it is invalid only to the extent. and in the proportion that the receipts upon which it is based were derived from interstate commerce, said question is hereby certified to the Supreme Court of the United States for its opinion.

" HOWELL E. JACKSON, *Circuit Judge.*
" GEO. R. SAGE, *District Judge.*"

*Mr. Lawrence Maxwell, Jr.,* for the Western Union Telegraph Company. *Mr. William M. Ramsey, Mr. William Brown,* and *Mr. Charles W. Wells* were with him on the brief. On the question whether the tax could be separated, and upheld in part and annulled in part, Mr. Maxwell said:

The questions are (1) whether the State of Ohio, although not at liberty to prevent the complainant from ·coming into the State to do interstate commerce, nor to tax it for that privilege, is nevertheless entitled to prohibit it from doing business between points within the State, and to tax it for that privilege? (2) whether the law, in its present form, can be used to enforce the collection of such a tax? in other words whether, after striking out the provisions of the Statute which are unconstitutional, effect is given to legislative intent by permitting the statute, thus emasculated, to stand as one authorizing and directing a tax upon the receipts derived from internal commerce?

### The Entire Law Falls.

*Telegraph Company* v. *Texas*, 105 U. S. 460), was a suit brought by the State against the telegraph company to recover unpaid taxes under a statute of Texas which required every chartered telegraph company to pay a tax of one cent for every full rate message sent, and one half cent for every message less than full rate. The state court rendered judgment for the tax on all messages that had been sent by the company, including those sent to places out of the State, and those sent by officers of the government of the United States on public business. The Supreme Court of Texas affirmed the judgment, and the case came into this court upon writ of error for review of the federal question, and the decision of this court was limited to the determination of that question, and was confined to a reversal of the judgment upon the ground that it included a tax upon interstate and government messages. With respect to the question whether the statute being found to be unconstitutional in that respect could nevertheless be used to enforce the collection of a tax upon messages passing between points within the State, this court said: "Whether the law of Texas in its present form can be used to enforce the collection of such a tax is a question entirely within the jurisdiction of the courts of the State, and as to which we have no power of review."

But in the case at bar, which is not a writ of error to a state court, but an appeal from the Circuit Court, sitting as a court of original jurisdiction to decide all questions arising in the case, it is the right and duty of this court to declare upon its own judgment whether, in view of the unconstitutional features of this statute, it can be used to enforce the collection, not of the tax for which it was intended to provide, but of a tax limited to receipts from internal business, even assuming the power of the State to tax such receipts.

In *State* v. *Hipp*, 38 Ohio St. 199, 230, it is said:

"Finally, it is urged that even if the section providing punishment for non-compliance with the requirements of the statute should be held to be unconstitutional, still that other parts of the act may stand. But, as Blackstone observes,

'the main strength and force of a law consists in the penalty annexed to it.' 1 Bl. Com. 57. It is not to be supposed that the legislature would have enacted this statute without such clause; and hence, the whole act fails. *The State* v. *Perry County*, 5 Ohio St. 497."

In *State* v. *Commissioners of Perry County*, 5 Ohio St. 497,506, our Supreme Court laid down the following rule: "As a general rule, one part of an act will not be held constitutional and another part unconstitutional, unless the respective parts are independent of each other," and the following language of Shaw, C. J., in *Warren* v. *Mayor and Aldermen of Charlestown*, 2 Gray, 84, was quoted with approval: "The same act of legislation may be unconstitutional in some of its provisions, and yet constitutional in others. . . . But this must be taken with this limitation, that the parts, so held respectively constitutional and unconstitutional, must be wholly independent of each other. But if they are so mutually connected with and dependent on each other as conditions, considerations or compensations for each other, as to warrant a belief that the legislature intended them as a whole, and that if all could not be carried into effect the legislature would not pass the residue independently, and some parts are unconstitutional, all the provisions which are thus dependent, conditional or connected, must fall with them."

The same language is quoted with approval by this court in *Allen* v. *Louisiana*, 103 U. S. 80, 84, the Chief Justice adding: "The point to be determined in all such cases is whether the unconstitutional provisions are so connected with the general scope of the law as to make it impossible, if they are stricken out, to give effect to what appears to have been the intent of the legislature."

Is it not clear that the unconstitutional provisions of the Ohio statute are so connected with the general scope of the law as to make it impossible, if they are stricken out, to give effect to what appears to have been the intent of the legislature?

The intent of the legislature, as declared by our own Supreme Court, in *Western Union Telegraph Co.* v. *Mayer*, 28

Ohio St. 521, was to impose a charge upon foreign telegraph companies for the privilege of exercising their franchises and powers within the State, graduated according to the amount of receipts.   The execution of that intention is now found to be impossible.   The legislature cannot prevent these companies from exercising their powers and franchises with respect to the great bulk of their business.   Can the court discover, nevertheless, an intent to charge them for the privilege of · doing business wholly within the State based upon the amount of their receipts from such business.   Did not the legislature intend the law as a whole?   Had it been advised that it could not tax the Western Union Telegraph Company for the privilege of coming into Ohio to do interstate commerce, nor with respect to that commerce, would it have passed the law at all?   Would it have laid a tax which, being confined to Ohio messages, must in the nature of things, be borne ultimately by the merchants of Ohio?   Had it known that its power was confined to taxing the receipts of the company from internal business, would it not have increased the rate?

These are only a few of the questions which embarrass us in an attempt to give effect to the statute by upholding it, not-withstanding its unconstitutional provisions, as a law authorizing and directing a tax against foreign telegraph companies upon their receipts from internal commerce.

It may be that the legislature of Ohio has authority to pass a law taxing such receipts, but it will be time enough for the courts to enforce such a law when warranted thereunto by some clear declaration of legislative intent.   It is not for the courts to enact or amend laws.

*Mr. Thomas McDougall* and *Mr. David K. Watson*, Attorney General of the State of Ohio, for Ratterman. *Mr. William A. Davidson*, County Solicitor for Hamilton County, Ohio, was with them on the brief.   To the point that the receipts were separable, and that the court might apportion them, they said:

The certificate of division of opinion in this case presents this question.   Take it for granted, for the purposes of argu-

ment, that the tax on the receipts from interstate commerce business is unconstitutional, does that vitiate the whole act so as to authorize the court to enjoin the collection of the tax assessed on the receipts for business done wholly within the State, as well as the receipts for business done without the State ?

It must be admitted that the legislature of Ohio intended to tax the business done wholly within the State. Its authority to tax the receipts from that business cannot be questioned in this court; but has been expressly upheld in numerous cases. Does the fact that the tax is levied, or, if you please, intended to be levied, upon that which it had no power to levy it on, destroy its right to collect a tax from that which it had the right to tax?

This court has held that the law may be valid as to one class of receipts, and invalid as to another. In the *Philadelphia Steamship Co.* v. *Pennsylvania*, 122 U. S., on page 339, the court say : " The court, in its opinion, took notice of the fact that the law was general in its terms, making no distinction between freight transported wholly within the State and that which was destined to or came from another State. But it was held that this made no difference. The law might be valid as to one class, and unconstitutional as to the other."

In the case of *Fargo* v. *Michigan*, 121 U. S., the court, speaking of the same law, (on page 241,) say : " The Supreme Court of the State of Pennsylvania decided that all the freight carried, without regard to its destination, was liable to the tax imposed by the statute. This court, however, held that freight carried entirely through the State from without, and the other class of freight brought into the State from without, or carried from within to points without, all came under the description of 'commerce among the States,' within the meaning of the Constitution of the United States ; and it held also, that freight transported from and to points exclusively within the limits of the State was internal commerce, and not commerce among the States. The taxing law of the State was, therefore, valid as to the latter class of transportation, but with regard to the others it was invalid,

because it was interstate commerce, and the State could lay no tax upon it."

In the case of the *Telegraph Co.* v. *Texas*, 105 U. S., on page 465, the court say : " The present case, as it seems to us, comes within this principle. The tax is the same on every message sent, and because it is sent, without regard to the distance carried or the price charged. It is in no respect proportioned according to the business done. If the message is sent, the tax must be paid, and the amount determined solely by the class to which it belongs. If it is full rate, the tax is one cent, and if less than full rate, one half cent. Clearly, if a fixed tax for every two thousand pounds of freight carried is a tax on the freight, or for every measured ton of a vessel a tax on tonnage, or for every passenger carried a tax on the passenger, or for the sale of goods a tax on the goods, this must be a tax on the messages. As such, so far as it operates on private messages sent out of the State, it is a regulation of foreign and interstate commerce, and beyond the power of the State. That is fully established by the cases already cited. As to the government messages, it is a tax by the State on the means employed by the government of the United States to execute its constitutional powers, and therefore void. It was so decided in *M'Culloch* v. *Maryland*, 4 Wheat. 316, and has never been doubted since. It follows that the judgment, so far as it includes the tax on messages sent out of the State, or for the government, on public business, is erroneous."

In that case a judgment was rendered by the state court against the telegraph company for the tax on the messages within the State, and for the messages which were wholly interstate commerce. And this court held that, so far as the judgment included the tax on messages sent out of the State, or for the government, it was erroneous, and reversed the judgment, and remanded the case for proceedings in accordance with the opinion. In the case at bar the court's attention is called to what constituted the sum of $5206.90, which was the amount of the tax sought to be enjoined by the bill of the telegraph company. A part of that sum consisted of

the tax levied on the personal property, the wires, batteries, and poles of the company within the county of Hamilton. The remainder of the tax was what was assessed, as we claim, on the moneys received from the business, and treated as other personal property for taxation. There was no practical difficulty in the way of separation. There was no such intermingling of the receipts as made it impossible to separate the one class from the other. They were in fact separated by the court below. And yet it is claimed, though the separation is practicable, and has been made by the court below, though the amount can be ascertained to a cent of what was received from each class of business, yet the telegraph company has a right to perpetually enjoin, and thereby be released from the tax on the whole gross receipts, notwithstanding the admitted fact that the State may tax the gross receipts for the business done within the State. We know of no rule of construction of a statute that authorizes the holding of the whole tax invalid, because it was levied on property a part of which it is claimed the State had no right to tax. It will be remembered by this court that the tax laid on railway gross receipts, held to be valid in 15 Wall. included the receipts of both classes, and that in that case, as in the case of *Fargo* v. *Michigan*, 121 U. S., the receipts were separated, although the law in one of the cases was general in its terms, as in the case at bar.

The rule applicable to the granting of relief by way of injunction, which was what was sought in the case at bar, is to be found in the case of *Frazer* v. *Seibern*, 16 Ohio St. 614. In that case, on page 624, the court say, after finding that the act itself, to the extent that it taxed banks in excess of the taxation levied on the state banks, was unconstitutional: "It by no means follows, however, that the plaintiffs are entitled to an unconditional injunction against the collection of the tax. They ask equity, and must do equity. They invoke the exercise of an extraordinary power of the court for their relief, and the court, in its discretion, should refuse that relief, except upon conditions that are equitable and just. We think, therefore, that the injunction should only be granted upon the condition that the plaintiffs, or their bank, shall first pay

to the treasurer of Hamilton County a sum that will be a *pro rata* equivalent for the tax imposed upon the State and independent banks under the act of 1861; that is to say, such sum as might lawfully have been assessed upon the plaintiffs, or their bank, under said act, had it been one of said state banks. If the parties cannot agree upon this sum, proceedings can be adopted to ascertain it by the court; and, if found necessary, the bank itself can be made a party."

We submit, therefore, that should this court hold the law of the State of Ohio unconstitutional, it can only do so to the extent that it taxes the moneys received from the interstate commerce business of the Western Union Telegraph Company.

MR. JUSTICE MILLER, after stating the case, delivered the opinion of the court.

The case has been fully argued before us upon all the matters properly presented by the record, and it seems probable from the amicable nature of the proceedings and the agreement as to a statement of facts upon which the case was to be tried, without any answer being filed to the bill, that the purpose was to obtain the judgment of this court upon the general subject of the liability of the corporation to taxation upon the amount of its receipts, and that the certificate of a difference of opinion has been used for that purpose.

With regard to the question which is certified to us as dividing the opinions of the judges of the Circuit Court, we do not think that there is any difficulty, and can hardly see how it arose in the present case. That question is "whether a single tax, assessed under the Revised Statutes of Ohio, § 2778, upon the receipts of a telegraph company, which receipts were derived partly from interstate commerce and partly from commerce within the State, but which were returned and assessed in gross and without separation or apportionment, is wholly invalid, or invalid only in the proportion and to the extent that said receipts were derived from interstate commerce."

We do not think this particular question is material in

this case, because the state of facts agreed upon by the parties makes this separation and presents the matter to the court, freed from the point raised by the question that the tax was not separable. Nor do we believe, if there were allegations either in the bill or answer setting up that part of the tax was from interstate commerce and part from commerce wholly within the State, that there would have been any difficulty in securing the evidence of the amount of receipts chargeable to these separate classes of telegrams, by means of the appointment of a referee or master to inquire into that fact and make report to the court. Neither are we of opinion that there is any real question, under the decisions of this court, in regard to holding that, so far as this tax was levied upon receipts properly appurtenant to interstate commerce, it was void, and that so far as it was only upon commerce wholly within the State it was valid.

This precise question was adjudged in the case of *The State Freight Tax*, 15 Wall. 232. That was a case in which a statute of the State of Pennsylvania was examined which provided for a tax upon every ton of freight transported by any railroad or canal in that State at certain rates, two cents for one class of freight, three cents for another, and five cents for still another class. The payment of this tax was resisted by the Reading Railroad Company upon the ground that it was levied on interstate commerce. The company made returns to the accounting officers of the commonwealth, in which they stated separately the amount of freight whose transportation was wholly within the State, and also the amount of the transportation of freight brought into or carried out of that State. This court held that the tax upon the former class, being upon commerce wholly within the State, was valid under the law of Pennsylvania by which it was imposed, but that the latter classes, being commerce among the States, were not subject to such taxation.

This ruling shows that where the subjects of taxation can be separated so that that which arises from interstate commerce can be distinguished from that which arises from commerce wholly within the State, the court will act upon this distinc-

tion, and will restrain the tax on interstate commerce while permitting the State to collect that arising upon commerce solely within its own territory.

In *Pensacola Telegraph Company* v. *Western Union Telegraph Company,* 96 U. S. 1, it was decided by this court that the telegraph was an instrument of commerce; that telegraph companies were subject to the regulating power of Congress in respect to their foreign and interstate business, and that such a company occupies the same relation to commerce, as a carrier of messages, that a railroad company does as a carrier of goods.

In *Telegraph Company* v. *Texas,* 105 U. S. 460, the same question presented in this case was before the court, that of the power of the State to tax telegraphic messages received and delivered by the same corporation which is now before us. In that case no distinction was made by the statute between what we now call interstate messages and those exclusively within the State. This court, therefore, in reviewing the decision of the Supreme Court of the State of Texas, which had allowed no deduction for taxes on messages sent out of the State, or by government officers on government business, said: "It follows that the judgment, so far as it includes the tax on messages sent out of the State, or for the government on public business, is erroneous. The rule that the regulation of commerce which is confined exclusively within the jurisdiction and territory of a State, and does not affect other nations or States or the Indian tribes, that is to say, the purely internal commerce of a State, belongs exclusively to the State, is as well settled as that the regulation of commerce which does affect other nations or States or the Indian tribes belongs to Congress. Any tax, therefore, which the State may put on messages sent by private parties, and not by the agents of the government of the United States, from one place to another, exclusively within its own jurisdiction, will not be repugnant to the Constitution of the United States. Whether the law of Texas, in its present form, can be used to enforce the collection of such a tax is a question entirely within the jurisdiction of the courts of the State, and as to which we have no power of review."

The court reversed the judgment of the Supreme Court of Texas, and remanded the cases with instructions for such further proceedings as justice might require. Evidently, the purpose of this was to permit the Supreme Court of that State, if it could separate the taxes upon the two classes of telegrams, to do so, and to render judgment accordingly.

In the recent case of *The Western Union Telegraph Co.* v. *The Attorney General of the Commonwealth of Massachusetts*, 125 U. S. 530, decided at this term, a tax was levied upon that corporation, apportioned under the laws of Massachusetts upon the taxable value of its capital stock. The ratio which should have been allotted to that commonwealth may be supposed to have been properly apportioned to it, ascertaining that portion by means of the length of the lines of the company in relation to the entire mileage of its lines in the United States. The payment of the tax was resisted, however, partly upon the ground that it was levied upon interstate commerce, but mainly because it was asserted to be a violation of the rights conferred on the company by the act of July 24, 1866, now Title LXV., §§ 5263 to 5269 of the Revised Statutes. It was alleged that the defendant company, having accepted the provisions of that law, was entirely exempt from taxation by the State. This court, however, held that this exemption only extended under that law to so much of the lines of the telegraph company as were, in the language of § 5263, "through and over any portion of the public domain of the United States, over and along any of the military or post roads of the United States which have been or may hereafter be declared such by law, and over, under, or across the navigable streams or waters of the United States."

It was shown in that case that, of the 2833.05 miles of the lines of the defendant corporation within the boundaries of Massachusetts, more than 2334.55 miles came within the terms of that section, being over or along post roads, made such by the United States, or over, under, or across its navigable streams or waters, leaving only 498.50 miles not within such description, on which the company offered to pay the proportion of the tax assessed against it according to mileage by the state authorities.

We refer to this now only for the purpose of showing how easily the subject of taxation which is forbidden by the Constitution may be separated from that which is permissible in this class of cases.    The court held in that case that this tax, being in effect levied upon the capital stock or property of the company in the State of Massachusetts, which was ascertained upon the basis of the proportion which the length of its lines in that State bore to their entire length throughout the whole country, and not upon its messages or upon the receipts for such messages, was a valid tax.    The question of interstate commerce, as affecting the tax in that action, was very little pressed by counsel for the company, but they relied upon the privilege granted by § 5263, already cited, to companies which accepted its provisions, and upon the fact that a large proportion of the lines of the defendant telegraph company were over or along post roads, or over, under, or across the navigable streams or waters of the United States.

In the present case counsel for the telegraph company have argued that this statute secures the corporation from taxation of any kind whatever, and especially as to receipts arising from messages sent over its lines; but that question does not arise in this action, because there is no allegation or averment, either in the bill itself or in the statement of facts, that any part of the lines of the telegraph company in the State of Ohio is built over or along a post road, or comes within the provisions of § 5263.    The only reference to this subject is in the following allegation of the bill: "That prior to 1869 your orator accepted in writing the provisions of the act of Congress of July 4, 1866, 14 Stat. 221."    Under this allegation the complainant can, of course, claim no benefit from the provisions of that section, for it does not appear that any part of the company's line comes within the description of this section of the Revised Statutes.

Under these views, we answer the question, in regard to which the judges of the Circuit Court divided in opinion, by saying that a single tax, assessed under the Revised Statutes of Ohio, upon the receipts of a telegraph company which were derived partly from interstate commerce and partly from com-

merce within the State, but which were returned and assessed in gross and without separation or apportionment. is *not* wholly invalid, but is invalid only in proportion to the extent that such receipts were derived from interstate commerce. Concurring, therefore, with the circuit judge in his action, enjoining the collection of the taxes on that portion of the receipts derived from interstate commerce, and permitting the treasurer to collect the other tax upon property of the company and upon receipts derived from commerce entirely within the limits of the State, this decree is

*Affirmed.*