DickMAN, J.
In May, 1886, the defendant in error — The American Express Company, returned its gross receipts for taxation to the auditor of Hamilton county. Thé return was made in accordance with the provisions of section 2778, of the Revised Statutes, which provides that, “Each agent of any express company, or telegraph company, having its principal office in any other state or country, and doing business in this state, shall, annually, in the month of May, make and deliver to the auditor of the proper county in which such agent has his place of business, a statement, verified by the oath of such agent, showing the entire receipts of such agent for the year then next preceding for and on account of such company, including its proportion of gross receipts for business done by such company in connection with lines of other companies outside of the limits of this *616 state; provided, that the amount which any express company actually pays to the railroads within this state, for the transportation of their freight within this state, may he deducted from the gross receipts of such company as above ascertained, and the balance thus found as to the express ■companies, and the gross receipts as above ascertained for the telegraph companies, shall be by said auditor entered upon the duplicate of his county, against said company.”
The return of the express company showed the entire gross earnings for the year next preceding, without a separate itemization and statement of the receipts from the state business, as distinct from those from interstate business for the year mentioned. The aiiditor assessed a single tax on the aggregate receipts, and required the company to pay the same, The company made pajunent under protest, on the ground that the tax was unlawful, and in violation of the Constitution of the United States, and to avoid the penalties, disabilities and punishment imposed by section 2843 of the Revised Statutes.
That section provides as follows: “If the taxes assessed against any express company, telegraph company, telephone company, or insurance company, in any county in this state, shall remain due and unpaid to the treasurer of such county, for the period of twenty days after the time provided by law for the payment thereof, it shall be unlawful for any person or persons, or corporation, to act as agents, or do or transact any business for such company so in default to such county, until said tax, and interest, and penalty is fully paid; any person or agent, manager or clerk of any corporation, who shall, after such default, directly or indirectly act •as agent of, or do or transact any business whatever on account of or for the benefit of such company so in default, other than the payment of said tax, shall be held to be guilty of a misdemeanor, and on conviction thereof, shall be fined in any sum not less than one hundred nor more than five hundred dollars, or punished by imprisonment in the county jail, and fed on bread and water only, not exceeding thirty daj^s, or'both, at the discretion of the court; after such default, made as aforesaid, any railroad company *617 which shall, directly or indirectly, convey or carry for said, defaulting express, telegraph, telephone company or insurance company, any package of money, merchandise, or other articles, or transmit any telegraphic message, after having notice of such default, shall, for every such offense, forfeit and pay a sum equal to the amount of such tax due and ^unpaid, with the interest and penalty thereon, to be recovered by an action in the name of the state, in the county where such tax is assessed, with costs of suit. ”
At the time of the payment of the tax by the company, its legality might have been deemed settled by adjudication’ of this court and of the Supreme Court of the United States. In Western Union Telegraph Company v. Mayer, 28 Ohio St. 521, it was held, under the provisions of “an act for the assessment and taxation of express and telegraph companies “ (S. & S. 769-771,) that, a state taxon the gross receipts of such company for the year next preceding the assessment return is not a tax on commerce between the several states, within the meaning of article 1, section 8, of the Constitution of the United States, although they arose chiefly from messages pertaining to such commerce, or from messages originating or terminating outside of the state, or were earned on. the lines of such companies outside of the state.
And in the case of State Tax on Railway Gross Receipts, 15 Wall, 284, the same principle was recognized, and it was there held that, a statute of a state imposing a tax upon the gross receipts of railro'ad companies is not repugnant to the Constitution of the United States, though the • gross receipts áre made up in part from freights received for transportation of merchandise from the state to another state, or into the state from another, and that such a tax is not a regulation of interstate commerce. “We-think,” says STRONG, J., “it may safely be laid down that the gross-receipts of railroad or canal companies, after they have reached the treasury of the carriers, though they may have • been derived in part from transportation of freight between, states, have become subject to legitimate taxation.”
*618 But in Ratterman v. Western Union Telegraph Company, 127 U. S. 411, decided in 1888, it was held that, a single tax, assessed under the Revised Statutes of Ohio, upon receipts of a telegraph company which were partly derived from interstate commerce and partly from commerce within the state, and which were capable of separation but were returned and assessed in gross and without separation or apportionment, is invalid in proportion to the extent that such receipts were derived from interstate commerce, but is otherwise valid. The same rule would govern as to the invalidity of a tax, assessed under section 2778 of the Revised Statutes, upon receipts of an express company derived in part from interstate business, and partly from business within the state.
But, conceding the tax on receipts from interstate business to be invalid, while that on receipts from business within the state is valid, we do not think that the statute, under which the entire tax was assessed in gross and without separation or apportionment, is so indivisible in its operation that if one portion of the tax is illegal the collection of the other cannot be enforced. In the case before us, no difficulty can arise in determining what part of the tax is legal, and what part is illegal. The parties, in their agreed statement of facts, have made the separation, and it there appears that the amount of gross receipts set forth in the return of the express company, towit: $31,776.00 was made up of the sum of $4,767.00 from state business, and the sum of $27,009.00 from interstate business — that the amount of tax payable on state business was $120.87, and the amount of tax payable on interstate business was $684.97. The statute contemplates the taxation of the gross receipts of the express company, but, we do not conceive that the legislative intent is contravened, if the taxable gross receipts can be readily separated from those that are not taxable, and the .company is thereby relieved from an illegal assessment. See Treasurer v. Bank, 47 Ohio St. 603.
The tax, both legal and illegal, on its gross receipts for the year next preceding the month of May, 1886, having been paid in full by the express company, the question is *619 presented, can the company recover back that portion of the tax which is invalid by reason of its having been assessed on receipts from business between the states?
It is contended in behalf of the plaintiff in error that the payment was voluntary, and if so, that no right of action accrued to the express company, notwithstanding the invalidity of the tax. The principle is an ancient one in the common law, and is of general application, that a tax voluntarily paid cannot be recovered back, and it is immaterial that the tax has been illegally laid, or even that the law under which it was laid was unconstitutional. Under section 5848 of the Revised Statutes, courts of common pleas and superior courts have jurisdiction to enjoin the illegal levy of taxes and assessments, or the collection of either, and of actions to recover back such taxes or assessments as have been collected, without regard to the amount thereof. But the statute is not to be construed as authorizing the recovery back of taxes and assessments illegally levied, unless they have been paid involutarily. In Whitbeck v. Minch, 48 Ohio St. 210, it is said that, a party who pays an illegal assessment upon his property, cannot recover it back in a suit against the treasurer, unless the payment was an involuntary one.
It is difficult to lay down a rule by which to determine in the numerous cases 'that may arise, whether a payment has been made voluntarily or under compulsion. It has been repeatedly held, however, that a mere protest against the validity of a tax or assessment, with notice to the treasurer that the party intends to bring suit to recover it back, is not alone sufficient to relieve the payment of its presumed voluntary character. If in such case litigation is intended, it should, to be of avail, precede payment, whereby the party would have a plain remedy by injunction, provided by section 5848 of the Revised Statutes. Whitbeck v. Minch, supra.
In the case of Mays v. Cincinnati, 1 Ohio St. 268, it is stated as a general rule, that, to make the payment of an illegal demand involuntary, it must be made to appear that it was made to release the person or property of the party *620 from detention, or to prevent a seizure of either by the other party having apparent authority to do so without resorting to an action at law. In keeping with the rule thus announced was the decision in Stephan v. Daniels, 27 Ohio St. 527, where, the property was returned delinquent for both taxes and assessment, and the real estate advertised to be sold at delinquent tax sale to pay the same. The plaintiffs, in order to release the land from custody and prevent its being sold at such sale, and to save the penalties incident to such sale, paid the taxes and illegal assessment then due, under protest.
But the rule, as stated in Mays v. Cincinnati, does not preclude all other duress or coercion that would render the payment of an illegal tax or assessment involuntary or compulsory. Indeed, in Baker v. Cincinnati, 11 Ohio St. 534, the court say, in reference to that rule: “ After an examination of the authorities, we think that the statement •which has been cited from Mays v. Cincinnati, should be qualified.” In Baker v. Cincinnati, it was accordingly held that, a payment may be, under circumstances, involuntary, and an action brought to recover back the money, when the position or interests of the party are such as to require from another the performance of a duty enjoined by law, and he is illegally compelled to pay the money to induce such performance. In that case, a party seeking to give a theatrical exhibition could not give it until after the payment Of the license fee, which was a condition precedent to the performance.
And in Catoir v. Waterson, 38 Ohio St. 319, it was held that, a person engaged in the traffic in intoxicating liquors who, under protest, paid into the county treasury the sum required of a dealer in liquors, by the terms of the act of April 5, 1882, known as “ The Pond Taw,” might mantain an action to recover back the sum so paid. The payment was regarded as a condition to doing business, as. made under an unconstitutional law, with protest, and Baker v. Cincinnati was followed as direct authority that the action to recover back the sum paid might be maintained.
*621 In the path of the foregoing adjudications, the decision in Western Union Telegraph Company v. Mayer, supra, naturally followed, and in view of the illegality of the tax laid upon receipts from interstate business, we deem it conclusive of the case at bar. It was there held that, where a corporation is assessed on its gross receipts, under the provisions of “an act for the assessment and taxation of express and -telegraph companies," (S. & S. 769-771. R. S., § 277.7-2778-2779), and pays such assessment to avoid the penalties and disabilities incurred by a refusal to pay, but under' protest, and after notifying the treasurer that an action would be brought to recover back; such payment is not voluntary, and an action may be maintained to recover back the amount so paid, if the tax is illegal.
A payment under protest, on the ground of illegality of the tax assessed against the express company, to avoid the penalties and disabilities imposed by section 2848 of the Revised Statutes, cannot, in our judgment, be regarded as a voluntary payment. It matters not that the tax was paid before default day, when the inevitable and severe statutory penalties in case of delinquency are taken into consideration. A failure to comply with the requirement of the statute as to the payment of the tax, would have imperiled the existence of the company’s business; and to save its business in this state and to a large extent in the United States from destruction, it was necessary to avoid the statutory penalties and disabilities. The statute made it a crime punishable by imprisonment in the county jail, and to be fed on bread and water only, for any person, or agent, manager or clerk of any corporation, to do or transact any business whatever for such company in default of payment of the tax; and any railroad company was prohibited, under penalty of forfeiting a sum equal to the tax and penalty, from carrying' any package of money, merchandise, or other articles, for such defaulting express company. With the obvious danger in view that employees, and others independent of and beyond the control of the express company would be deterred by the penalties, and refuse to carry for it packages, parcels, or merchandise in the line of its *622 business, a payment of the tax by the company might well be deemed to have been made under duress or coercion, and without waiver by the company of its day in court. If the payment of an illegal tax under protest as a condition precedent to the privilege of carrying on one’s business, is to be treated as involuntary, so, the payment of such a tax under protest is none the less involuntary, when made to save from destruction a business already established.
Other questions in the case besides the aforegoing have received our consideration, but finding no error in the record, the judgment will be

Affirvied.