

# THE ATTORNEY GENERAL
# OF TEXAS

GERALD C. MANN

AUSTIN 11, TEXAS

~~WILL WILSON~~
ATTORNEY GENERAL

Honorable Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-1878
Re: Construction of Article 7070, Vernon's Annotated Civil Statutes, regarding the application of the tax levied thereby to gross receipts of domestic telephone companies derived from interstate calls.

We have for answer your letter of January 22, 1940, submitting for the opinion of this Department, the following inquiry and accompanying fact situation, which we quote:

"On May 29, 1935, I made a request of the Attorney General for an opinion as to the gross receipts tax in Article 7070 R. C. S. 1925 required of an operator of a telephone exchange, and on May 31, 1935 Assistant Attorney General Hubert T. Faulk rendered an opinion as per enclosed copy; on September 17, 1935, Mr. Faulk reversed his former opinion, copy of which is also enclosed.

"You will note that Article 7070 RCS 1925 provides that the gross receipts tax applies on the gross receipts from all business done within this State, from the use of other line or lines, telephone or telephones, and from the lease or use of any wire or equipment within this State.

"There are several companies operating near the borders of this State whose lines are wholly within the boundaries of the State. Where a telephone call originates within this State and is transmitted over said company's lines to the border, then is picked up by another company for some point outside of the State,

the Texas company is paid for that part of the use of
their lines within the State, and the company complet-
ing the call to the destination outside of the State
is paid their commission, and you will please review
this matter and give me your opinion if such calls as
outlined would be termed interstate calls or if the
gross receipts earned on these calls by the Texas
company would be taxable."

The general rule stating the limitations and restrictions
upon the taxation by a state of interstate commerce, or the regula-
tion of interstate commerce by a state under the guise of taxation,
is fully stated in 12 C. J. p. 96:

"It is well settled that a state cannot lay a tax
on interstate commerce in any form, whether by way of
duties laid on the transportation of the subjects of
that commerce, or on the receipts derived from that
transportation, or on the occupation or business of
carrying it on, for the reason that such taxation is
a burden on that commerce and amounts to a regulation
of it, and the power to regulate belongs to congress.
Indeed, taxation has been said to be one of the
principal forms of regulation attempted by the states,
and to be a form of regulation that has been uniformly
condemned by the courts. It is equally well settled
that the right of a state to tax property within its
borders is not impaired or defeated by the fact that
it is used in interstate commerce, and that to warrant
interference by the courts with the exercise of the
taxing power of a state, on the ground that it obstructs
or hampers interstate commerce, it must appear that the
burden is direct and substantial. The difficulty has
been, and is, to distinguish between legitimate at-
tempts to exert the taxing power of the state and
those laws which, although in the guise of taxation,
impose real burdens on interstate commerce as such.
In determining whether a state taxation law is valid
as imposing a tax on property having a situs within
its boundaries, or invalid as a burden on, and an in-
terference with, interstate commerce, the purpose of
the taxation, or the intent of the framers of the
statute, is immaterial, as is also the mode of col-
lection provided. Where a carrier is engaged in both
interstate and intra-state business, in the imposition
of a tax on such carrier in the interstate business
must be discriminated from the intra-state business,
or it must be made capable of such discrimination,

so that it may clearly appear that the intra-state
business alone is taxed. Whenever the subjects of
taxation can be separated, so that that which arises
from interstate commerce can be distinguished from
that which arises from commerce wholly within the
state, the distinction will be acted on by the courts,
and the state will be permitted to collect the tax
arising on commerce solely within its own territory."

Under the recognized principle announced above that pro-
perty within the borders of the State may be taxed by that State
despite the fact that it is used in interstate commerce, (Pull-
mann Palace Car Company vs. Penn., 141 U. S. 18, 35 L. ed. 613,
11 Sup. Ct. Rep. 876) taxes have been sustained that took ac-
count, not only of the local tangible values of the property,
but, in addition, considered the augmentation of value from the
commerce in which it was engaged. Adams Express Co. vs. Ohio,
State Auditor, 165 U. S. 194, 41 L. ed. 683, 17 Sup. Ct. Rep. 305;
Adams Express Co. vs. Kentucky, 166 U. S. 171, 41 L. ed. 960,
17 Sup. Ct. Rep. 527.

Moreover, it has been held that a tax on the property
and business of a railroad company operating within a state,
might be computed, on a gross income or receipts basis, by adding
to the income derived from business done wholly within the State,
the proportion of income from interstate business equal to the
proportion between the road over which the business was carried
within the State to the total length of the raod over which it
was carried. Wisconsin & M. R. Co. vs. Powers, 191 U. S. 379,
48 L. ed. 229, 24 Sup. Ct. Rep. 107.

This method of determining a fair and equitable property
tax upon the property of companies engaged in both intrastate
and interstate commerce, by computing same on the basis of a
fixed percentage of the earnings of the property, finds illustra-
tion, as to telephone companies, in the case of State vs. North-
western Telephone Exchange Company, 120 S. W. 534. The tax
statute upon which the case turned did not levy a property tax
computed upon gross receipts from intrastate business only, but,
additionally, upon a proportionate part of the gross receipts of
which company from interstate business or commerce. The court
reviewed the authorities upholding similar taxes upon the gross
receipts of railroad companies, and upheld the tax in the case
before it because it was based upon a proportionate part of the
earnings of the telephone companies derived from interstate
commerce, rather than a flat per centum of gross earnings derived
from any source whatsoever, whether interstate or intrastate.
This latter method of taxation was condemned as violative of
the commerce clause of the Constitution of the United States

in the case of Galveston, Harrisburg and San Antonio Ry. Co., et al vs. State of Texas, infra.

Under the facts here, the "gross receipts" sought to be taxed, were derived not from tolls on calls originating and ending within the confines of the State of Texas, but rather from tolls on calls originating in Texas and terminating in other states, or vice versa, - in other words, in interstate commerce. The fact that the telephone company in question receives only such part of the tolls as represents payment for the facilities and services furnished by it in transmitting the call from or to the borders of the State does not prevent such receipts from being stamped with the interstate commerce feature.

The statute under consideration here, Article 7070, Vernon's Annotated Civil Statutes, contains no language computing the tax upon gross receipts of interstate business upon the proportionate mileage basis recognized by these cases, but designates such tax an occupation tax and computes same upon gross receipts received by the telephone company "from all business within this State" etc. Are the "gross receipts" described above brought within this tax statute, as being derived from "business within this State," by reason of the fact that the company's lines lie wholly within the State? If so, then the statute presents the vice denounced in the cases of Galveston, Harrisburg & San Antonio Ry. Co. et al vs. State of Texas, 210 U. S. 217, 28 Sup. Ct. Rep. 638; Ratterman vs. Western Union Telegraph Co., 127 U. S. 411, 32 L. ed. 229, 8 Sup. Ct. Rep. 1127; Western Union Telegraph Co. vs. Texas, 105 U. S. 460, 26 L. ed. 1067; Western Union Telegraph Co. vs. Penn. 128 U. S. 39, 32 L. ed. 345, 9 Sup. Ct. Rep. 6.

In the case of Galveston, Harrisburg & San Antonio Ry. Co., et al, vs. State of Texas, supra, the Supreme Court of the United States, per Mr. Justice Holmes, held that the State of Texas could not impose a tax upon railway companies whose lines lie wholly within the State, "equal to one per centum of their gross receipts," where a part, and, in some cases, much the larger part, of these gross receipts, is derived from the carriage of passengers and freight coming from, and destined to, points without the State.

Likewise, the instant case involves a company whose facilities or lines lie wholly within the State of Texas, and a statute which purports to levy a tax of certain per centum upon the gross receipts therefrom. But the one saving dis-

tinction is that we may fairly and properly give a narrow and limited construction to the words of the statute "gross amount received from all business within the State," and say that same excludes the gross receipts described in your letter, even though such receipts were derived from the company's lines wholly intrastate, and might, in a general sense, be considered as stemming out of "business within the state. The statute involved in the above case could not be so construed and therefore was stricken down as an unlawful regulation of interstate commerce.

In recognition of our duty to so construe a statute, where possible, as to render same constitutional rather than unconstitutional, we hold that it was not the intention of the Legislature to bring gross receipts from the described telephone calls within the scope of Article 7070, Vernon's Annotated Civil Statutes, so as to be taxable thereunder.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By          Pat M. Neff, Jr.
            Assistant

PMN:N--pam
APPROVED MAY 9 1940
GERALD C. MANN
ATTORNEY GENERAL OF TEXAS

APPROVED OPINION COMMITTEE
BY BWB, CHAIRMAN