

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

December 12, 1951

Hon. Robert S. Calvert
Comptroller of Public Accounts
Austin, Texas

Opinion No. V-1371

Re: The validity of ad valorem
tax on intangible assets of
an interstate bus or truck
company.

Dear Mr. Calvert:

Your request for an opinion states that two out-of-State motor carriers have requested an exemption from the payment of the intangible assets and property tax imposed by the provisions of Article 7105, Vernon's Civil Statutes. The particular facts with respect to these two carriers reflect that each is authorized to use the highways of Texas in interstate commerce pursuant to interstate certificates of convenience and necessity issued by the Railroad Commission of Texas. The certificates allow the carriers to operate interstate only in accordance with the authority granted to them by the Interstate Commerce Commission. Neither has offices or shops in Texas, nor do they have tangible personal property permanently located in this State. On the other hand, each has a designated resident service agent in Texas, and each is operating over the highways of Texas for compensation and hire under the certificates issued by the Railroad Commission of Texas. One of the carriers is authorized by the Texas Railroad Commission to operate one hundred twelve (112) trucks over our highways while the other carrier is authorized to operate thirty-three (33) trucks. Each has purchased from the Commission the identification plates required by Article 911b, V.C.S. Each transports interstate freight into and out of Texas, using in such operations the highways of this State.

Based upon the above facts, you ask:

May the State Tax Board validly assess for taxation a proportionate share of the intangible assets and property of an out-of-State motor carrier under Article 7105, V.C.S. (such tax to be allocated on the basis of the mileage traveled in Texas compared to the total mileage traveled and the resulting percentages multiplied by the total intangible assets of the company, or some comparable method) although the company has no permanent tangible property in Texas on January 1 of the tax year in question?

Article 7105, V.C.S., was amended in 1941 (Acts 47th Leg., R.S. 1941, ch. 184, p. 269, at p. 295) so as to make subject to the Intangible Tax Act

" . . . each 'motor bus company,' as defined in . . . [Art. 911a] and each 'common carrier motor carrier' operating under certificates of convenience and necessity issued by the Railroad Commission of Texas, doing business wholly or in part within this State . . . . The intangible taxable values of said motor bus companies and said common carrier motor carriers shall be apportioned to the counties in or through which they operate in proportion to the distance in miles of the highways traversed by said carriers in each respective county."

The Supreme Court of the United States has consistently held that interstate commerce can be made to pay its way by bearing a nondiscriminatory share of the tax burden which each state may impose on the activities or property within its borders. Western Life Stock v. Bureau of Revenue, 303 U.S. 250 (1938), and cases therein cited. In the recent case of Ott v. Mississippi Valley Barge Line Co., 336 U.S. 169 (1949), it was held that Louisiana and New Orleans could levy an ad valorem tax on barges used in interstate commerce, based on the number of miles of barge lines in Louisiana and New Orleans in relation to the total mileage of the lines. This percentage was then applied to the total property of the barge line to determine what portion of the property was permanently within the State during the taxing year and subject to taxation. The Louisiana statute, like the Texas one, provides, "Assessments shall be made on the basis of the condition of things existing on the 1st day of January of each year."

The method used by Louisiana is similar to the method proposed for taxing the intangibles of the companies in question. We think it is proper for a proportionate share of the intangibles to be allocated to Texas for taxation, just as it was proper to allocate to Louisiana its proportionate share of the tangible property of the barge line. In Curry v. McCanless, 307 U.S. 357 (1939), it was stated, "The taxpayer who is domiciled in one state but carries on business in another is subject to a tax there measured by the value of the intangibles used in his business." The carriers are admittedly doing interstate business in Texas. Therefore, Texas may validly tax a proper portion of their intangible value.

In Central Greyhound Lines v. Mealey, 334 U.S. 653 (1948), there was involved the constitutionality of a tax levied by

New York on the gross receipts of a common carrier from transportation between two points in New York but over routes that utilized the highways of Pennsylvania and New Jersey. It was contended "that since the taxed transportation was interstate commerce, New York may not constitutionally tax the gross receipts from such transportation." Although the Court held that New York could not tax the entire revenue from such transportation, it held that

"... The tax may be 'fairly apportioned' to the 'business done within the state by a fair method of apportionment.' Western Life Stock v. Bureau of Revenue, 303 U.S. 250, 255. There is no dispute as to feasibility in apportioning this tax. On the record before us the tax may constitutionally be sustained on the receipts from the transportation apportioned as to the mileage within the State. See Ratterman v. Western Union Telegraph Co., 127 U.S. 411, 427-428." (334 U.S. at 663.)

In discussing the right of New Jersey and Pennsylvania to tax the proportionate part of the transportation over the highways of those states, the Court said: "If New Jersey and Pennsylvania could claim their right to make appropriately apportioned claims against that substantial part of the business of appellant to which they afford protection, we do not see how on principle and in precedent such a claim could be denied." (334 U.S. at 662.)

We think the reasoning set forth in the above cases is applicable here and supports the right of the State of Texas to levy the intangible tax in question, since, in our opinion, Texas is the situs for tax purposes of a proportionate share of the intangible assets of a company doing interstate business in this State.

That the rule applicable to intangibles is not different from that of tangible property is demonstrated by the following paragraph from Commonwealth of Virginia v. Imperial Coal Sales Co., 293 U.S. 15 (1934):

"Such taxation may embrace intangible as well as tangible property. Adams Express Co. v. Ohio State Auditor, 166 U.S. 185, 218, 219, 17 S.Ct. 604, 41 L.Ed. 965; Cudahy Packing Co. v. Minnesota, supra; Wells, Fargo & Co. v. Nevada, supra. It is not the character of the property that makes it subject to such a tax, but the fact that the property has its situs within the state and that the owner should give appropriate support to the government that protects it. That duty is not less when the property is intangible

than when it is tangible. Nor are we able to perceive any sound reason for holding that the owner must have real estate or tangible property within the state in order to subject its intangible property within the state to taxation."

In light of the above, the answer to your question is that the State Tax Board may validly assess for taxation a proper share of the intangible assets of a foreign corporation doing interstate business in Texas.

## SUMMARY

An out-of-State common carrier motor carrier operating over the highways of Texas under a certificate of convenience and necessity issued by the Railroad Commission of Texas is subject to the intangible tax provided in Article 7105, V.C.S., regardless of the fact that it has no permanent tangible property in Texas on January 1.

Yours very truly,

PRICE DANIEL
Attorney General

By L. P. Lollar
L. P. Lollar
Assistant

APPROVED:

Jesse P. Luton, Jr.
Reviewing Assistant

Charles D. Mathews
First Assistant

LPL/mwb