[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Rockies Express Pipeline, L.L.C. v. McClain,* Slip Opinion No. 2020-Ohio-410.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-410

ROCKIES EXPRESS PIPELINE, L.L.C., APPELLANT, *v.* MCCLAIN,[1] TAX COMMR., APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Rockies Express Pipeline, L.L.C. v. McClain,* Slip Opinion No. 2020-Ohio-410.]

*Taxation—Public-utility excise tax—R.C. 5727.33(B)(1)'s exclusion of "receipts derived wholly from interstate business" from a public utility's computation of its taxable gross receipts does not apply to receipts earned by transporting gas solely within Ohio—Imposing such tax does not violate the Commerce Clause of the United States Constitution—Board of Tax Appeals' decision affirmed.*

(No. 2018-0882—Submitted August 6, 2019—Decided February 11, 2020.)

APPEAL from the Board of Tax Appeals, No. 2016-1144.

————————————

———————————

1. Under S.Ct.Prac.R. 4.06(B), Jeff McClain, the current Ohio Tax Commissioner, is automatically substituted for Joseph Testa, the former commissioner, as a party to this action.

**FRENCH, J.**

{¶ 1} Ohio's public-utility excise-tax statutes provide that "[a]ll receipts derived wholly from interstate business" are excluded from a public utility's computation of its taxable gross receipts. R.C. 5727.33(B)(1). We conclude that when, as here, a public utility transports natural gas for others through an interstate pipeline, the exclusion does not apply to the class of receipts the utility earns by transporting the gas solely within Ohio. We also conclude that imposing the tax on this class of receipts does not violate the Commerce Clause.

## FACTS AND PROCEDURAL BACKGROUND

*Rockies' operations*

{¶ 2} Appellant, Rockies Express Pipeline, L.L.C. ("Rockies") is an interstate pipeline used for transporting natural gas. Rockies does not gather or process gas, and its incidental purchases and sales of gas are not at issue. The pipeline is 42 inches in diameter, roughly 1,700 miles long, and crosses through eight states, including Ohio. The pipeline's westernmost termini are in Wyoming and Colorado; its easternmost terminus is in Monroe County, which is located on Ohio's eastern border. Rockies' pipeline connects with 28 other interstate pipelines; six of these interconnections are located in Ohio. Although Rockies originally focused its operations on transporting gas from production areas in the West to serve markets in the East, the discovery of large gas supplies in Ohio and elsewhere prompted Rockies to modify its system to support bidirectional service. Due to the interconnectedness of the interstate-pipeline grid and the transitory nature of gas molecules, it is feasible for Rockies to receive gas from wells located anywhere in the United States.

{¶ 3} Rockies is regulated by the Federal Energy Regulatory Commission ("FERC"), *see* 15 U.S.C. 717 et seq., and its customer dealings are governed by its FERC-filed gas tariff, which prescribes Rockies' schedule of rates and general terms and conditions of service. The transactions at issue here involve Rockies'

2

transportation of natural gas to four types of delivery locations: (1) other interstate pipelines, (2) one industrial end-use customer, AK Steel, (3) two local distribution companies,[2] and (4) two hub pooling points.[3]

*Proceedings before the tax commissioner*

{¶ 4} Rockies reported to the tax commissioner on its 2015 Annual Statement of Gross Receipts that it generated $699,018,936 in gross receipts for transporting natural gas. Rockies assigned this entire amount to interstate-business activities and reported no taxable gross receipts. Based on that assignment, Rockies reported the minimum tax liability of $50. After Rockies reported its statement, an agent for the tax commissioner asked Rockies to provide additional information on its within-Ohio deliveries. Rockies submitted information pertaining to 36 discrete transactions in which it charged a total of $2,084,426 to transport natural gas solely within Ohio. Of these transactions, 94.1 percent were deliveries to other interstate pipelines, 1.9 percent were to local distribution companies, 2.8 percent were to industrial end users, and 1.2 percent were to hub pooling points.

{¶ 5} After reviewing Rockies' information, the tax commissioner assessed Rockies a tax liability of $139,011.26 on gross receipts of $2,084,426—in other words, the commissioner assessed Rockies on transactions in which natural gas entered and exited Rockies' pipeline within Ohio. Rockies paid the tax and petitioned the tax commissioner for reassessment under R.C. 5727.47, arguing that its receipts derived wholly from interstate business and thus were eligible for exclusion under R.C. 5727.33(B)(1).

---

2. Local distribution companies receive natural gas from a pipeline company's transmission system and deliver the gas to the end user. *Columbia Gas Transm. Corp. v. Levin*, 117 Ohio St.3d 122, 2008-Ohio-511, 882 N.E.2d 400, ¶ 27.

3. According to Rockies, a hub pooling point is not a specific physical location but a virtual delivery point where multiple interconnections are treated as one delivery point, or hub. Hub pooling points facilitate market liquidity by permitting shippers to designate the delivery of gas to a virtual pooling point rather than a precise location.

{¶ 6} The tax commissioner issued a final determination upholding the assessment. The commissioner rejected Rockies' reliance on R.C. 5727.33(B)(1)'s exclusion of interstate-business receipts because, he reasoned, receipts earned from shipments that start and end in Ohio are best understood as derived from intrastate—not interstate—business. The commissioner also disagreed with the contention that taxing Rockies' receipts violated the Commerce Clause.

*Proceedings before the Board of Tax Appeals*

{¶ 7} The Board of Tax Appeals ("BTA") affirmed the tax commissioner's final determination, concluding as a statutory matter that Rockies' receipts were not eligible for exclusion. The BTA declined to address whether imposition of the tax exceeded any constitutional limits on Ohio's taxing power. Rockies then appealed the BTA's decision to the Tenth District Court of Appeals. While that appeal was pending, Rockies filed a transfer petition with this court and asked us to accept jurisdiction over the appeal.

*Questions presented*

{¶ 8} We granted Rockies' petition, 153 Ohio St.3d 1486, 2018-Ohio-3867, 108 N.E.3d 83, which presents two propositions of law. The first involves a matter of statutory construction: whether the gross receipts earned by a public utility for the transportation of natural gas flowing through an interstate pipeline should be excluded from taxation under R.C. 5727.33(B)(1) as "receipts derived wholly from interstate business" when those receipts relate solely to within-Ohio trips. In its second proposition of law, Rockies argues that Ohio's imposition of a tax on such gross receipts violates the Commerce Clause of the United States Constitution. We address each proposition in turn.

**ANALYSIS**

*The interstate-business exclusion in R.C. 5727.33(B)(1)*

{¶ 9} Subject to certain exceptions, Ohio imposes on "each public utility * * * an annual excise tax * * * for the privilege of owning property in this state or

doing business in this state * * *." R.C. 5727.30(A). The term "public utility" includes a "pipe-line company," R.C. 5727.01(A), "engaged in the business of transporting natural gas * * * through pipes or tubing, either wholly or partially within this state," R.C. 5727.01(D)(5). The tax generally extends to "the entire gross receipts actually received from all sources for business done within this state * * *." R.C. 5727.33(A). Certain categories of gross receipts are excluded from this general rule. The exclusion at issue in this appeal provides:

> (B) In ascertaining and determining the gross receipts of each public utility subject to this section, the following gross receipts are excluded:
>> (1) All receipts derived wholly from interstate business.

R.C. 5727.33.

{¶ 10} The exclusion in R.C. 5727.33(B)(1) dates back to 1910 and has not changed since its original enactment. Then, as now, a "pipe line company" could exclude from its gross receipts "all receipts derived wholly from interstate business * * *." *See* H.B. No. 68, 101 Ohio Laws 399, 409, 411.

{¶ 11} Rockies posits that all of its gross receipts in tax year 2015 are "derived wholly from interstate business" and therefore fall within the exclusion. As with any matter of statutory interpretation, we begin with the text of the enactment. *State v. Hanning*, 89 Ohio St.3d 86, 91, 728 N.E.2d 1059 (2000). We must construe strictly any claimed exemption from taxation, and the taxpayer bears the burden of establishing its entitlement to the exemption. *A. Schulman, Inc. v. Levin*, 116 Ohio St.3d 105, 2007-Ohio-5585, 876 N.E.2d 928, ¶ 7. We conclude that the plain text of R.C. 5727.33(B)(1) does not support Rockies' argument.

{¶ 12} In our view, the scope of the exclusion turns largely on the meaning of the word "interstate." In the absence of a statutory definition, we rely on the "common, ordinary, and accepted meaning" of a word. *State v. Black*, 142 Ohio St.3d 332, 2015-Ohio-513, 30 N.E.3d 918, ¶ 39; R.C. 1.42. The ordinary meaning of the words the General Assembly used at the time of enactment also guides our determination of legislative intent. *See Volz v. Volz*, 167 Ohio St. 141, 146, 146 N.E.2d 734 (1957). In 1910, the word "interstate" meant "[b]etween two or more states; between places or persons in different states; concerning or affecting two or more states politically or territorially." *Black's Law Dictionary* 651 (2d Ed.1910). The meaning of the word has not changed materially in the intervening decades. *See Webster's New International Dictionary* 1300 (2d Ed.1953) (defining "interstate" as "[p]ertaining to the mutual relations of states; existing between, or including, different states"); *Black's Law Dictionary* 948 (10th Ed.2014) ("interstate" means "[b]etween two or more states or residents of different states; involving different states, esp. in the United States").

{¶ 13} The word "interstate," as understood since 1910, refers to matters existing or occurring between two states. Applying this meaning, we conclude that Rockies' tax-year-2015 receipts do not bear an interstate character. The state does not seek to tax any receipts generated from transporting gas from Ohio to another state. Rather, the tax commissioner seeks to tax only those receipts that are derived from the transportation of gas that entered Rockies' pipeline in Ohio and exited the pipeline at a delivery point in Ohio. We view the receipts derived from Rockies' transportation of gas within Ohio as taxable receipts generated from "business done within this state," R.C. 5727.33(A).

{¶ 14} Rockies does not offer an alternative meaning of the word "interstate," nor does it dispute that the receipts at issue involve transactions in which Rockies received and delivered gas within Ohio. Rather, it argues that the phrase "interstate business" is interchangeable with "interstate commerce" and that

we should examine Commerce Clause cases decided around the time of the statute's enactment to determine what the General Assembly intended to exclude from taxation as interstate commerce.

{¶ 15} "*If* a statute is ambiguous," we may consider factors such as "[t]he circumstances under which the statute was enacted" to determine legislative intent. (Emphasis added.) R.C. 1.49(B). We have stated, however, that resort to extraneous sources of legislative intent is improper without an initial finding of ambiguity. *Jacobson v. Kaforey*, 149 Ohio St.3d 398, 2016-Ohio-8434, 75 N.E.3d 203, ¶ 8, quoting *Dunbar v. State*, 136 Ohio St.3d 181, 2013-Ohio-2163, 992 N.E.2d 1111, ¶ 16 ("Without 'an initial finding' of ambiguity, 'inquiry into legislative intent, legislative history, public policy, the consequences of an interpretation, or any other factors identified in R.C. 1.49 is inappropriate.' "). *Compare State v. Sinito*, 43 Ohio St.2d 98, 100-102, 330 N.E.2d 896 (1975) (considering United States Supreme Court precedent and the historical circumstances of an enactment only after finding the statute unclear on its face). A statute is ambiguous only if its language is susceptible of more than one reasonable interpretation. *Dunbar* at ¶ 16.

{¶ 16} We see no ambiguity—and Rockies makes no contention of any ambiguity—in the phrase "interstate business," as used in R.C. 5727.33(B)(1). As we explained, the word "interstate" has a clear and definite meaning. At the time of the enactment, the word "business" meant "everything about which a person can be employed. That which occupies the time, attention, and labor of men for the purpose of a livelihood or profit." (Citation omitted.) *Black's Law Dictionary* 158 (2d Ed.1910). The excise tax here captures only Rockies' "business" within the state—i.e., its livelihood or profits derived from transporting gas from one point in Ohio to another point within Ohio. Given the plain and unambiguous language of the statute, we see no basis for examining the historical underpinnings of the exclusion in R.C. 5727.33(B)(1).

{¶ 17} Rockies also relies on *Columbia Gas Transm. Corp. v. Levin*, 117 Ohio St.3d 122, 2008-Ohio-511, 882 N.E.2d 400, to argue that its transportation of natural gas to each of the delivery points at issue constitutes movement through interstate commerce and therefore falls within the exclusion in R.C. 5727.33(B)(1). Our holding in *Columbia Gas*, however, does not address or warrant reversal of the excise tax imposed here on Rockies.

{¶ 18} In *Columbia Gas*, a public utility challenged its designation as an interstate-pipeline company for the purpose of determining the tax assessment on its personal property. Columbia, a federally regulated interstate-pipeline company, was required to pay property tax at a higher rate than state-regulated local distribution companies. Columbia argued that this disparate tax treatment violated the Commerce Clause. *Id*. at ¶ 50. Columbia attempted to show that interstate pipelines and local distribution companies directly compete with each other because local distribution companies own significant amounts of transmission pipeline (as identified by the diameter and pressure strength of the pipeline). *Id*. at ¶ 60-61. We noted, however, that FERC does not rely on pipeline diameter and pressure as controlling for purposes of distinguishing between interstate transportation and local distribution of natural gas. *Id*. at ¶ 62. Rather, FERC defines interstate transportation as "beginning at the point where the interstate pipeline receives gas from the gathering or production area and ending at the point where the interstate pipeline delivers gas into the [local distribution company's] distribution facility (commonly known as the 'city gate')." *Id*. We also acknowledged that under federal law, "the transportation of natural gas by an interstate pipeline directly to an end user constitutes transportation in interstate commerce, not local distribution." *Id*. at ¶ 63. We therefore rejected Columbia's constitutional claim because it could not make a threshold showing that interstate-pipeline companies and local distribution companies are similarly situated or compete for the same customers. *Id*. at ¶ 58, 65.

**{¶ 19}** Rockies relies on the above language from *Columbia Gas* to argue that its deliveries to other interstate pipelines, to local distribution companies, and to an industrial end user all constitute interstate commerce and thus fall under the interstate-business exclusion in R.C. 5727.33(B)(1). But the federal authorities we invoked in *Columbia Gas* addressed whether a matter fell under FERC's exclusive jurisdiction under the Natural Gas Act. *See Columbia Gas*, 117 Ohio St.3d 122, 2008-Ohio-511, 882 N.E.2d 400, at ¶ 62, citing *Midwestern Gas Transm. Co.*, 87 F.E.R.C. ¶ 61169, 61674 (May 12, 1999) (concluding that FERC has exclusive jurisdiction over the construction and operation of a proposed interstate transportation facility); *id.* at ¶ 63, citing *Oklahoma Natural Gas Co. v. Fed. Energy Regulatory Comm.*, 906 F.2d 708, 710 (C.A.D.C.1990) (affirming FERC jurisdiction over transportation of gas from interstate pipeline to single end user). A determination that an activity falls within FERC's regulatory authority as a matter of interstate commerce does not foreclose every other form of state regulation affecting that activity. *See Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 135 S.Ct. 1591, 1600, 191 L.Ed.2d 511 (2015) (FERC's exclusive jurisdiction over interstate-pipeline wholesale rates did not preempt state antitrust law and would not foreclose state enforcement of tax laws). Our holding in *Columbia Gas* does not preclude the tax commissioner here from taxing the intrastate business receipts of an interstate pipeline under R.C. 5727.33.

**{¶ 20}** Rockies also argues that the tax commissioner lacked any basis to tax its deliveries to hub pooling points because they are virtual locations and not physical facilities. But R.C. 5727.33 does not impose a tax on the act of making a physical delivery in Ohio. It imposes a tax on "receipts actually received from all sources for business done within this state." R.C. 5727.33(A). As reported by Rockies, its deliveries to hub pooling points in Ohio generated $24,664 in business receipts in tax year 2015. Whether characterized as virtual or physical deliveries,

these transactions constitute business within the state that generated taxable receipts.

{¶ 21} We adhere to the unambiguous language enacted by the General Assembly and conclude that Rockies has not met its burden of showing that its receipts fall under the exclusion in R.C. 5727.33(B)(1) as "receipts derived wholly from interstate business." We find that the gross receipts earned by Rockies for tax year 2015 from transporting natural gas solely within Ohio constitute taxable receipts "actually received from all sources for business done within this state," R.C. 5727.33(A).

*The Commerce Clause*

{¶ 22} Rockies argues in its second proposition of law that if we decide that the interstate-business exclusion does not apply, then imposing the tax under these circumstances would violate the Commerce Clause. We disagree.

{¶ 23} The United States Constitution empowers Congress "[t]o regulate Commerce * * * among the several States." Article I, Section 8, cl. 3. Although written as an affirmative grant of power to Congress, the Commerce Clause has long been understood to "prohibit[] state laws that unduly restrict interstate commerce." *Tennessee Wine & Spirits Retailers Assn. v. Thomas*, __ U.S. __, 139 S.Ct. 2449, 2459, 204 L.Ed.2d 801 (2019). This "dormant" feature of the Commerce Clause serves as a bulwark against "protectionist measures" enacted by the States "and thus preserves a national market for goods and services." *Id.*

{¶ 24} In *Complete Auto Transit, Inc. v. Brady*, the United States Supreme Court articulated the standard for analyzing the validity of a state tax under the Commerce Clause. 430 U.S. 274, 279, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977). Under this four-part test, a tax is valid if it is "applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State." *Id.* Rockies challenges the substantial-nexus prong.

{¶ 25} The substantial-nexus inquiry "simply asks whether the tax applies to an activity with a substantial nexus with the taxing State." *South Dakota v. Wayfair, Inc.*, __ U.S. __, 138 S.Ct. 2080, 2099, 201 L.Ed.2d 403 (2018), overruling *Quill Corp. v. North Dakota*, 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992) and *Natl. Bellas Hess, Inc. v. Dept. of Revenue of Illinois*, 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967). When a taxpayer " 'avails itself of the substantial privilege of carrying on business,' " in the state, substantial nexus is established. *Id.*, quoting *Polar Tankers, Inc. v. Valdez*, 557 U.S. 1, 11, 129 S.Ct. 2277, 174 L.Ed.2d 1 (2009).

{¶ 26} In *Crutchfield Corp. v. Testa*, we addressed the concept of substantial nexus in the context of Ohio's commercial-activity tax, which is a form of business-privilege tax measured by gross receipts. 151 Ohio St.3d 278, 2016-Ohio-7760, 88 N.E.3d 900. We held that "physical presence in the state may furnish a sufficient basis for finding a substantial nexus." *Id.* at ¶ 42. We then went on to hold that physical presence is not necessary if the "privilege tax is imposed with an adequate quantitative standard that ensures that the taxpayer's nexus with the state is substantial." *Id.*

{¶ 27} The first part of our holding from *Crutchfield* decides the constitutional question at issue here: Rockies has substantial nexus with Ohio based on its physical presence within the state. That physical presence manifests itself in the interstate pipeline that Rockies installed across the width of Ohio—a pipeline that enables it to transport natural gas for its customers. By installing and transporting natural gas through that pipeline, Rockies has availed itself of the privilege of carrying on business in Ohio.

{¶ 28} Rockies argues that "[t]he application of a state tax on interstate commerce cannot depend upon which interstate route the goods take." But in concentrating on the movement of the gas, Rockies has ignored its Ohio-sited

pipeline. Rockies' theory, if accepted, would seemingly defeat a finding of substantial nexus in every state in which its pipeline is located.

{¶ 29} *Big Boy's Toy, Ltd. v. Limbach*, 64 Ohio St.3d 448, 597 N.E.2d 76 (1992), a case that Rockies cites, does not require a different result. *Big Boy's Toy* was a use-tax case in which we reversed the BTA for applying the wrong substantial-nexus standard in evaluating the taxability of transient property, namely, a boat. This case, in contrast, does not involve the tax commissioner's attempt to tax the use of transient property. The public-utilities excise tax is a form of privilege tax, R.C. 5727.30(A), and the measure of that privilege stems from Rockies' gross receipts, R.C. 5727.33(A). To be sure, Rockies earns its gross receipts from transporting gas, which is a transient commodity; however, the gas itself is not being taxed. *See Ohio Grocers Assn. v. Levin*, 123 Ohio St.3d 303, 2009-Ohio-4872, 916 N.E.2d 446, ¶ 17 ("we have long recognized a distinction between a tax upon a certain factor and a tax upon a privilege measured by that factor" [emphasis deleted]).

## CONCLUSION

{¶ 30} For the foregoing reasons, we affirm the BTA's decision and conclude that Rockies' gross receipts for tax year 2015 from the transportation of natural gas within the state of Ohio are not excluded from taxation under R.C. 5727.33(B)(1) as "receipts derived wholly from interstate business." We also hold that taxation on such gross receipts does not violate the Commerce Clause of the United States Constitution.

Decision affirmed.

O'CONNOR, C.J., and DONNELLY and STEWART, JJ., concur.

DEWINE, J., concurs, with an opinion joined by KENNEDY and FISCHER, JJ.

_____

**DEWINE, J., concurring.**

{¶ 31} I agree with the majority that R.C. 5727.33(B)(1) allows the tax commissioner to collect taxes on gas transport with starting and ending points in Ohio. But my analysis differs.

{¶ 32} At issue here is the proper interpretation of the exemption in R.C. 5727.33(B)(1), which excludes from taxation "[a]ll receipts derived wholly from interstate business." The statute was adopted in 1910 and the majority rightly looks to the meaning of the provision at that time. *See* H.B. No. 68, 101 Ohio Laws 399. But it reaches the conclusion that the disputed receipts are taxable based on a plain-meaning analysis guided by definitions contained in period dictionaries. In many cases, that may be a sensible way to undertake the inquiry. But that approach sometimes fails to adequately situate a phrase in the relevant historical and legal context. *See In re Sinclair*, 870 F.2d 1340, 1342 (7th Cir.1989) (Easterbrook, J.). And in this case that context is relevant to the statute's meaning. As I explain, the phrase "interstate business" is best understood to have a technical legal meaning that is responsive to a specific set of legal issues that were prominent at the time the statute was passed. Still, I think the majority gets to the right result because once the phrase is situated in its historical and legal context, it is evident that the disputed receipts are properly subject to the tax.

{¶ 33} What was the relevant historical and legal context? In a series of cases from the end of the nineteenth and the beginning of the twentieth century, the United States Supreme Court held that the Commerce Clause limited a state's authority to tax rail and pipeline companies transporting goods in interstate commerce. As will be apparent shortly, to call the rules from that era arcane would be something of an understatement—and by the end of the 1970s, the court had rejected the entire approach. *See Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 289, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977). But in 1910 that rather arcane

approach was alive and well, and it is against that backdrop that the exclusion in R.C. 5727.33(B)(1) must be understood.

{¶ 34} The basic principles were fairly straightforward. At the end of the nineteenth century, it was well established that states could not tax interstate commerce directly, though they could tax the property of interstate carriers within the state. *See Galveston, Harrisburg, & San Antonio Ry. Co. v. Texas*, 210 U.S. 217, 225, 28 S.Ct. 638, 52 L.Ed. 1031 (1908). Of course, states had a free hand in taxing wholly intrastate commerce directly. *Ratterman v. W. Union Tel. Co.*, 127 U.S. 411, 425, 8 S.Ct. 1127, 32 L.Ed. 229 (1888).

{¶ 35} But the principle that states could tax the property of interstate carriers though not interstate commerce itself raised the question of how to value that property. And around the turn of the century, the court allowed states to impose a tax based on the percentage of receipts in proportion to the percentage of a route that was within the taxing state, even if the route crossed state lines. *Maine v. Grand Trunk Ry. Co.*, 142 U.S. 217, 228-229, 12 S.Ct. 121, 35 L.Ed. 994 (1891). But such taxes based on the gross receipts of interstate transport were upheld only insofar as they truly functioned as a proxy for taxing the value of the privilege of doing business within the state; states could not tax interstate commerce directly. *Grand Trunk* at 229; *see also United States Express Co. v. Minnesota*, 223 U.S. 335, 347, 32 S.Ct. 211, 56 L.Ed. 459 (1912).

{¶ 36} Confronted with this legal backdrop, the Ohio legislature enacted the disputed exclusion in 1910. *See Ohio Tax Cases*, 232 U.S. 576, 591-592, 34 S.Ct. 372, 58 L.Ed. 737 (1914). As recounted by the *Ohio Tax Cases* court, the exclusion was passed in response to the United States Supreme Court's 1908 *Galveston* decision. *Id.* at 592. The decision in *Galveston* led to doubts about the constitutionality of Ohio's tax scheme, which included a tax calculated by first determining a company's average gross receipts per mile of line and then multiplying that number by the number of miles in Ohio. *Id.*; *see also Galveston*

14

at 227-228. So, "anticipat[ing] that the [prior] law would probably be held unconstitutional," the General Assembly enacted the current version of the exclusion limiting the tax to what constitutionally could be taxed: earnings from intrastate transport. *Ohio Tax Cases* at 592.

{¶ 37} Given this history, in 1910, it would have been plain to all concerned that for purposes of the exemption, "interstate business" had a technical legal meaning informed by the Commerce Clause jurisprudence of the era. Thus, in *Ohio Tax Cases*, the United States Supreme Court construed the phrase "excluding therefrom all earnings derived wholly from interstate business" to mean that the tax applied only to earnings from intrastate commerce that the state could tax without offending the prevailing understanding of the Commerce Clause. *Id.* at 591.

{¶ 38} Indeed, this is the approach that Rockies asks us to take. They argue that at the time the statute was passed, "interstate business" would have been understood to include intrastate segments of the transport of goods otherwise moving in interstate commerce. In other words, Rockies invites us to treat its transport of gas wholly within Ohio as interstate business because that gas may have originated in another state or ultimately be destined for another state.

{¶ 39} This line of argument presents something of a puzzle (and also shows why the statute is not as unambiguous as the majority presumes). Consider a case in which a company transports goods from Cincinnati to Cleveland and another company picks up the goods in Cleveland and takes them to Pittsburgh. Is the transfer from Cincinnati to Cleveland an intrastate transfer because the starting and ending points for the contract of delivery are within the same state? Or is it better to conceive of that trip as a portion of an interstate transfer of goods because the goods are ultimately destined to move across state lines? In short, the puzzle is how to determine the starting and ending points for the transport of goods so that one can decide whether that transport is interstate or intrastate.

{¶ 40} Suffice it to say, courts from the era were aware of this puzzle and they had a partial solution—but not the one that Rockies argues for here. The seminal case on this issue is *Coe v. Errol*, 116 U.S. 517, 6 S.Ct. 475, 29 L.Ed. 715 (1886). There, the court had to assess whether logs sent from New Hampshire forests to a New Hampshire way station were taxable, notwithstanding the fact that they would be later sent on to Maine. The court held that they were taxable. Interstate commerce, the court explained, commenced when the goods "are committed to the common carrier for transportation out of the State to the State of their destination, or have started on their ultimate passage to that State." *Id.* at 525. Until the goods are actually put into the custody of a carrier destined for some out-of-state location, they are still subject to state taxation, because until that time they "may never be exported." *Id.* at 526.

{¶ 41} The relevant principles were further elaborated in 1907 when the United States Supreme Court was asked to decide whether goods transferred from Texarkana, Texas, to Goldthwaite, Texas, were in interstate commerce because before arriving in Texarkana, the goods had been shipped from Hudson, South Dakota. *Gulf, Colorado, & Santa Fe Ry. Co. v. Texas*, 204 U.S. 403, 411, 27 S.Ct. 360, 51 L.Ed. 540 (1907). The court concluded that this segment of the shipment was intrastate commerce, despite the origin of the goods, because the goods had been shipped from South Dakota to Texarkana under one contract of shipment and from Texarkana to Goldthwaite under a separate contract of shipment. *Id.* at 412-413. Thus, the court adopted the principle that the contract of shipment could be used to determine the starting and ending point for assessing whether a transfer of goods is interstate or intrastate. *Id.* at 413. And the court emphasized that the further intentions of the owner of the goods were immaterial. *Id.*

{¶ 42} The principle that can be derived from these cases is that as it would have been understood in 1910, goods were in intrastate commerce, and therefore subject to taxation by the state, if the contract for transport was between two points

16

in the same state. That the goods might be sent out of state after reaching the destination under the contract doesn't change that fact. Applied here, that means that Rockies is subject to the tax for any shipments with starting and ending points within Ohio, regardless of the further movement of the goods after they leave Rockies' pipeline. What the tax commissioner taxed was only those contracts of shipment with starting and ending points in Ohio. Hence, I agree with the majority that the tax imposed comported with the statute.

{¶ 43} Thus, on the first question presented—whether the transactions at issue are exempt from taxation under R.C. 5727.33(B)(1)—I agree with the majority that the statutory exclusion does not exempt the transactions at issue from taxation, but my reasoning differs. The second question presented asks whether the imposition of such a tax violates the Commerce Clause of the United States Constitution. On this question, I agree both with the majority's conclusion that the imposition of the tax does not violate the Commerce Clause and also with its reasoning.

KENNEDY and FISCHER, JJ., concur in the foregoing opinion.

———————————

Taft Stettinius & Hollister, L.L.P., and W. Stuart Dornette, J. Donald Mottley, and Philip D. Williamson; MBGallTax, and Maryann B. Gall; and Van Ness Feldman, L.L.P., and Paul Korman, for appellant.

Dave Yost, Attorney General, and Benjamin M. Flowers, State Solicitor, Zachery P. Keller, Deputy Solicitor, and Daniel W. Fausey and Zachary J. Stackhouse, Assistant Attorneys General, for appellee.

———————————