[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Jones Apparel Group/Nine West Holdings v. Harris*, Slip Opinion No. 2026-Ohio-74.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-74

JONES APPAREL GROUP/NINE WEST HOLDINGS, APPELLANT AND CROSS-APPELLEE, *v.* HARRIS, TAX COMMR., APPELLEE AND CROSS-APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Jones Apparel Group/Nine West Holdings v. Harris*, Slip Opinion No. 2026-Ohio-74.]**

*Taxation—Commercial-activity tax ("CAT")—Situs of gross receipts—Corporation failed to provide documentary evidence that established the amount of gross receipts for merchandise transported out of Ohio and thus failed to meet evidentiary burden to prove entitlement to CAT refund—Board of Tax Appeals' decision affirmed.*

(No. 2023-1288—Submitted April 1, 2025—Decided January 14, 2026.)

APPEAL and CROSS-APPEAL from the Board of Tax Appeals, Nos. 2020-53 and 2020-54.

_____

BRUNNER, J., authored the opinion of the court, which DEWINE, DETERS, HAWKINS, and SHANAHAN, JJ., joined. KENNEDY, C.J., dissented, with an opinion joined by FISCHER, J.

**BRUNNER, J.**

{¶ 1} Appellant and cross-appellee, Jones Apparel Group/Nine West Holdings ("Jones Apparel"), filed a refund claim with appellee and cross-appellant, Patricia Harris, Tax Commissioner of Ohio, requesting a refund of taxes it had paid under Ohio's Commercial Activity Tax ("CAT"). Jones Apparel argued that it was owed the refund because a portion of the merchandise that it had sold into Ohio was eventually shipped out of Ohio, thereby removing the tax commissioner's authority to tax the gross receipts Jones Apparel earned from the sale of that merchandise. In other words, in the parlance of the CAT, Jones Apparel posited that the merchandise lacked an Ohio *situs*. The tax commissioner denied Jones Apparel's claim and the Board of Tax Appeals affirmed. Jones Apparel then brought this appeal, and the tax commissioner cross-appealed. We affirm the board's decision.

## I. BACKGROUND

### A. Legal background

{¶ 2} The CAT is "levied . . . on each person with taxable gross receipts for the privilege of doing business in this state." R.C. 5751.02(A). Subject to exceptions not applicable here, "gross receipts" are defined as "the total amount realized by a person, without deduction for the cost of goods sold or other expenses incurred, that contributes to the production of gross income of the person." R.C. 5751.01(F).

{¶ 3} For CAT purposes, "taxable gross receipts" are "gross receipts sitused to this state under [R.C. 5751.033]." R.C. 5751.01(G). But "[b]ecause business is conducted across state and international boundaries, imposing the tax often raises the thorny issue of how to properly allocate receipts to Ohio for taxation." *Defender*

*Sec. Co. v. McClain*, 2020-Ohio-4594, ¶ 18. To help navigate this issue, the General Assembly enacted R.C. 5751.033(E), which provides the following instructions:

> [1.] [G]ross receipts from the sale of tangible personal property shall be sitused to this state if the property is received in this state by the purchaser. [2.] In the case of delivery of tangible personal property by motor carrier or by other means of transportation, the place at which such property is ultimately received after all transportation has been completed shall be considered the place where the purchaser receives the property. [3.] For purposes of this section, the phrase "delivery of tangible personal property by motor carrier or by other means of transportation" includes the situation in which a purchaser accepts the property in this state and then transports the property directly or by other means to a location outside this state. [4.] Direct delivery in this state, other than for purposes of transportation, to a person or firm designated by a purchaser constitutes delivery to the purchaser in this state, and direct delivery outside this state to a person or firm designated by a purchaser does not constitute delivery to the purchaser in this state, regardless of where title passes or other conditions of sale.

### B. Factual background

{¶ 4} Jones Apparel designs, markets, and sells apparel, shoes, and accessories at wholesale and retail. This case concerns Jones Apparel's sales to DSW, Inc., which operates retail stores throughout the United States. For the tax years at issue in this case—2010 through 2016—all of the merchandise that Jones Apparel sold to DSW was initially shipped to what was then DSW's only

distribution center, located in Columbus, Ohio. DSW would then "pick and pull" the merchandise from the distribution center and send it on to DSW's individual retail stores. Our understanding of the facts presented in this case is that DSW did not ship merchandise to the retail stores to fulfill each individual in-store retail sale; rather, the in-store sales were fulfilled with the merchandise that was in stock at each retail store.

{¶ 5} For the tax years at issue in this case, when Jones Apparel sold its merchandise to DSW, it knew that the merchandise would ship to DSW's distribution center in Columbus but it did not know how long the merchandise would sit in the distribution center or to which retail stores DSW would eventually ship the merchandise.

{¶ 6} From January 1, 2010, through December 31, 2016, Jones Apparel paid the CAT on the gross receipts it earned from selling its merchandise to DSW, situsing its gross receipts to Ohio. But Jones Apparel later filed a refund claim with the tax commissioner, claiming that it should not have paid the CAT on a portion of the gross receipts it had earned, because the selected portion lacked an Ohio situs.[1] According to Jones Apparel, although the merchandise it had sold to DSW was initially shipped to DSW's distribution center in Columbus, the vast majority of that merchandise eventually left the distribution center for placement in DSW's retail stores located outside Ohio. Jones Apparel based its claim on evidence that it acquired after it had sold the merchandise to DSW.

{¶ 7} The tax commissioner rejected this evidence, concluding that because Jones Apparel's shipping labels and bills of lading identified an Ohio delivery

1. Jones Apparel actually filed two CAT-refund claims, the first for the period January 1, 2010, to December 31, 2013, and the second for the period January 1, 2014, to December 31, 2016. The facts and law applicable to both refund claims are the same; therefore, for ease of reference, we will generally refer to the claims as a singular refund "claim" throughout this opinion. Within the initial filings, Jones Apparel also sought a refund pertaining to receipts it earned on sales made to other entities, some of which the tax commissioner granted and some of which she denied. This appeal only concerns Jones Apparel's sales to DSW.

address, it was proper to situs the merchandise's shipment to Ohio. The tax commissioner further reasoned that if she were to look beyond the shipping labels and bills of lading that Jones Apparel created and consider "secondary" evidence, then "numerous compliance and administrative issues" would arise because, for example, she would be required to verify the accuracy of records created by a company or individual who was not subject to the initial audit, assessment, or refund claim. Jones Apparel appealed the tax commissioner's denial of its CAT-refund claim to the board, which held an evidentiary hearing.

{¶ 8} At the hearing, George Neeman Jr., vice president and assistant treasurer of the entity formerly known as Nine West Holdings, Inc., and the person responsible for filing Jones Apparel's CAT tax returns for the tax years in question, testified on Jones Apparel's behalf. Neeman stated that although DSW had declined to provide Jones Apparel with shipping labels or other transportation data to identify the ultimate destination of Jones Apparel's merchandise, he was "absolute[ly] certain[] . . . that at least 80 percent of the items [that Jones Apparel sold to DSW] [were] shipped outside of Ohio" to DSW's other non-Ohio retail stores.

{¶ 9} Neeman offered four main reasons for his level of confidence in the 80-percent figure. First, he stated that he had personally seen a significant amount of Jones Apparel's merchandise in DSW's retail stores located in other states such as New Jersey and Pennsylvania. Second, he estimated that in 2013, DSW's Ohio retail stores sold about $100 million worth of merchandise to customers, but that Jones Apparel alone had sold $108 million in merchandise to DSW. Given those numbers, Neeman reasoned, DSW would have had to have sold Jones Apparel's merchandise at less than cost for Jones Apparel's merchandise alone to account for DSW's Ohio retail stores' total sales. But, Neeman asserted, there was "no way" that DSW would have sold those items for less than cost, and DSW also sells products made by brands other than Jones Apparel. Third, Neeman explained that

based on an average wholesale price for shoes of $15 to $20 per pair, DSW's Ohio retail stores would have had to have sold six million pairs of shoes in 2013 to account for the $108 million in merchandise that DSW bought from Jones Apparel. Spreading that figure across DSW's 17 Ohio retail stores, Neeman calculated that 350,000 pairs of shoes would have had to have been sold per store. Accounting for the number of days per year, he determined that each store would have had to sell about 1,000 pairs of shoes per day. Based on an average 12-hour day for which the retail stores generally operated, that would have required each store to have sold one pair of shoes per minute, which Neeman viewed as "not likely." Fourth, Neeman opined that based on the physical floor space available in an average DSW retail store and the size of a typical shoe box, it would have been virtually impossible for DSW's Ohio retail stores alone to accommodate all of the merchandise that Jones Apparel had sold to DSW.

{¶ 10} Jonathan Oeler, assistant director of digital-solutions development for Reed Smith, L.L.P., also testified on Jones Apparel's behalf. Oeler created software applications that could be used to query the availability of Jones Apparel's merchandise at DSW's Ohio and non-Ohio retail stores. For example, Oeler determined that for a sampling period of August 2018 to October 2018, one of Jones Apparel's sandals was available for sale in DSW's 17 Ohio stores and in 447 of DSW's non-Ohio stores. From that information, he then calculated that specific item to have what he termed an "Ohio offering" percentage—that is, the percentage of availability of the item within DSW's Ohio retail stores as compared to its non-Ohio retail stores—of around 4 percent. Oeler ran this same query for all of Jones Apparel's merchandise available in DSW's retail stores and calculated a total "Ohio offering" percentage of 3.85 percent.

{¶ 11} Allison Johnson, a tax auditor specialist with the Department of Taxation, testified on the tax commissioner's behalf. Johnson was assigned to review Jones Apparel's refund claim, which included a review of Jones Apparel's

sales records, bills of lading, and shipping labels. She testified that "everyone knows that shipments are going to leave a distribution center and end up nationwide," but that she was not provided with documentation showing where a particular shipment would be delivered after it left DSW's distribution center in Columbus.

{¶ 12} The board affirmed the tax commissioner's denial of Jones Apparel's refund claim. The board began by observing that under R.C. 5751.033(E), "situsing is based on where the purchaser receives the property after all transportation is complete." BTA Nos. 2020-53 and 2020-54, 2023 WL 6066665, *5 (Sept. 13, 2023). The board then considered the tax commissioner's argument that because Jones Apparel only knew at the time of shipment that its merchandise was destined for Columbus, it was proper to situs to Ohio the gross receipts it earned from selling that merchandise. The board rejected this argument, opining that nothing in R.C. 5751.033(E) or caselaw impose on the taxpayer a "requirement of contemporaneous knowledge of the [merchandise's] ultimate destination at the time of transportation." *Id.* at *6. Indeed, the board said it could "contemplate circumstances in which a taxpayer could present evidence that [the taxpayer] obtained after transportation was complete that would successfully demonstrate that the goods were ultimately received outside of Ohio" in support of its a CAT-refund claim. *Id.*

{¶ 13} On the other hand, the board agreed with the tax commissioner that Jones Apparel had failed to meet its evidentiary burden to show entitlement to a refund in this case. The board singled out Oeler's analysis, noting that it related to a time period (August 2018 to October 2018) that postdated the time period of Jones Apparel's refund claim (January 2010 to December 2016). Moreover, the board observed that Oeler's time period for analysis (three months) was "extremely short in comparison" to the time period over which Jones Apparel sought its refund (seven years). *Id.*

{¶ 14} Jones Apparel then brought this appeal, raising two propositions of law, and the tax commissioner cross-appealed, raising one proposition of law.

## II. ANALYSIS

{¶ 15} Our role in reviewing decisions from the board on appeal is to determine whether the board's decision was reasonable and lawful. *See* R.C. 5717.04; *Adams v. Harris*, 2024-Ohio-4640, ¶ 23.

### A. Jones Apparel's first proposition of law

{¶ 16} Jones Apparel's first proposition of law asserts that "[t]he BTA properly determined that a taxpayer is not subject to CAT on gross receipts from the sale of goods ultimately received outside Ohio, even if the taxpayer lacks subjective knowledge of the ultimate destination at the time of shipping." Jones Apparel's agreement with the board's resolution of the legal question presented in its first proposition of law essentially amounts to an admission that it is not aggrieved by the board's decision relating to this proposition. This presents a problem for Jones Apparel because, "[i]n tax proceedings, a party may appeal a decision only to the extent that the decision aggrieves that party," *Moskowitz v. Cuyahoga Cty. Bd. of Revision*, 2017-Ohio-4002, ¶ 11. Because Jones Apparel is not aggrieved by the board's decision relating to its first proposition of law, it is not the proper party to pursue that proposition of law in its appeal. *See Dayton-Montgomery Cty. Port Auth. v. Montgomery Cty. Bd. of Revision*, 2007-Ohio-1948, ¶ 33.

{¶ 17} However, the tax commissioner has filed a cross-appeal containing a lone proposition of law that essentially advances the converse of Jones Apparel's first proposition of law. Although presented by way of a cross-appeal, the tax commissioner's argument presents an alternative basis for affirming the board's decision that Jones Apparel was not entitled to a refund. Specifically, the tax commissioner asserts that "[w]here a taxpayer sells items of tangible personal property, and the records contemporaneous to the taxpayer's sales reflect that,

pursuant to those sales, those items were delivered only to Ohio, then the gross receipts from those sales are properly sitused to Ohio" under R.C. 5751.033(E). As noted, the board rejected this argument. The tax commissioner therefore may properly present the argument she raises in her cross-appeal as an alternative basis for affirming the board's order. We turn to this question below.

### B. The tax commissioner's proposition of law on cross-appeal

{¶ 18} The tax commissioner argues that R.C. 5751.033(E) creates a contemporaneous-knowledge requirement such that for purposes of situsing determinations, a taxpayer's documentation and ordinary business records created contemporaneously to the sales in question showing where the taxpayer's merchandise will be shipped, "must be used to corroborate what the taxpayer contemplated with the sales in question." The commissioner insists that the taxpayer's subjective knowledge, as evidenced by its records created "at or near the time that the transactions in question occurred," should be the basis for situsing determinations under R.C. 5751.033(E). To illustrate, suppose, as here, a taxpayer creates a shipping label showing that its merchandise will be sent to a purchaser with an Ohio delivery address and that, at the time of creating the label, the taxpayer is unaware whether the merchandise will later be delivered outside Ohio. Under the tax commissioner's view, the State may exercise its taxing power over such a transaction, even if the taxpayer later acquires evidence showing that the merchandise was in fact delivered outside Ohio.

{¶ 19} To determine whether the tax commissioner's understanding of R.C. 5751.033(E) is correct, the analysis must begin with the language of the statute. *Rockies Express Pipeline, L.L.C. v. McClain*, 2020-Ohio-410, ¶ 11. "[A] statute's meaning is determined by the language that is used." *In re N.M.P.*, 2020-Ohio-1458, ¶ 21. We thus "presume that the legislature says in a statute what it means and means in a statute what it says there." (Cleaned up.) *State ex rel. Lee v. Karnes*,

2004-Ohio-5718, ¶ 27. When a statute's language is unambiguous, we apply the statute as written. *Johnson v. Montgomery*, 2017-Ohio-7445, ¶ 15.

{¶ 20} The tax commissioner's argument fails for a simple reason: The contemporaneous-knowledge requirement she claims to exist in R.C. 5751.033(E) is not there. To bring the requirement into existence, we would have to exceed our constitutional role and create the requirement by amending the statute's words. *See Wheeling Steel Corp. v. Porterfield*, 24 Ohio St.2d 24, 27-28 (1970) ("Neither the Board of Tax Appeals, nor this court, may legislate to add a requirement to a statute enacted by the General Assembly."). Further, we find it significant that CAT-refund claims generally must be submitted "within four years after the date of the illegal or erroneous payment." R.C. 5751.08(A). While it is true that a CAT-refund claim must be accompanied by "documentation to support" it, *id.*, the statute does not specify the type of documentation that must be furnished to support the claim, *see id.*

{¶ 21} We reject the proposition of law asserted by the tax commissioner in her cross-appeal.

### C. *Jones Apparel's second proposition of law*

{¶ 22} In Jones Apparel's second proposition of law, it argues that it proved that the goods at issue were ultimately received outside Ohio. It insists that the evidence it presented to the board established that 80 percent of its sales to DSW were ultimately received by DSW's non-Ohio retail stores. Jones Apparel thus asks for a CAT refund that reflects this percentage, which it says corresponds to a refund of $854,627.

{¶ 23} Jones Apparel's evidentiary argument relies on four main points. First, it cites Neeman's testimony, in which he opined that significant portions of the merchandise that Jones Apparel sold to DSW ended up outside Ohio. Jones Apparel places especial importance on Neeman's statement that he knew with "absolute certainty . . . that at least 80 percent of the items [sold to DSW] are

shipped outside of Ohio." Second, Jones Apparel cites Oeler's testimony, in which he testified that only 3.85 percent of DSW's inventory attributable to Jones Apparel was available at DSW's Ohio retail stores. Third, Jones Apparel argues that DSW's Form 10-Ks—reports filed annually with the United States Securities and Exchange Commission—establish that it would have been mathematically impossible for all of Jones Apparel's merchandise to have stayed in Ohio. And finally, Jones Apparel notes that even Johnson, who testified on the tax commissioner's behalf, said that it was common knowledge that merchandise shipped to a distribution center will eventually get distributed throughout the United States.

{¶ 24} Jones Apparel maintains that the board "improperly ignored or rejected [this] uncontroverted testimony and evidence" in upholding the denial of its refund claim. But neither of the cases that Jones Apparel cites in support of its argument involved a situsing determination on a refund claim. *See SFZ Transp., Inc. v. Limbach*, 1993-Ohio-240; *Rowe-Reilly Corp. v. Tracy*, 1999-Ohio-326.

{¶ 25} This case involves both the situsing determination under R.C. 5751.033(E) and the refund procedures under R.C. 5751.08, the latter of which requires that the taxpayer "provide the amount of the requested refund along with the claimed reasons for, and documentation to support, the issuance of a refund," R.C. 5751.08(A). By using the word "amount," R.C. 5751.08(A) contemplates that the taxpayer must make a *quantitative* showing of the amount of the claimed refund with documentary evidence that justifies the issuance of a refund. *See Webster's Third New International Dictionary* (2002) (defining "amount" as "the total number or quantity").

{¶ 26} Here, Jones Apparel needed to provide documentary evidence of the amount of the gross receipts that should not have been sitused to Ohio. *See* R.C. 5751.033(E). We can reasonably infer from the testimony of Jones Apparel's witnesses that *some* portion of its merchandise that was sold to DSW eventually ended up outside Ohio. But Jones Apparel has not provided documentary evidence

that establishes the amount of gross receipts for the merchandise that was actually transported out of Ohio.

{¶ 27} Starting with Neeman, his statement that he had "absolute certainty" that 80 percent of Jones Apparel's sales to DSW were ultimately received by DSW's non-Ohio retail stores was little more than an educated guess. And although Neeman provided some explanation for his guess, he failed to explain at the hearing, and Jones Apparel failed to identify in its briefing, any quantitative evidence showing how that 80-percent figure was calculated. Turning to Oeler, although his analysis was comparatively more rigorous than Neeman's, he also failed to provide a sufficiently reliable calculation of the percentage of Jones Apparel's merchandise that was received in DSW's non-Ohio retail stores. As stated above, Oeler opined that Jones Apparel's merchandise had an "Ohio offering" percentage of 3.85 percent in DSW's Ohio retail stores—in other words, that approximately 96 percent of Jones Apparel's merchandise was shipped to stores outside Ohio. But even that figure is unreliable: It was computed from data that Oeler gathered from August 2018 through October 2018, a period that *postdates* the tax years at issue. Moreover, even if the data were from within the relevant tax years, it only spans a three-month period, whereas Jones Apparel seeks a refund over a seven-year period. Finally, even if it is true that DSW's Form 10-Ks tend to show that some of Jones Apparel's merchandise ended up in DSW's non-Ohio retail stores, Jones Apparel fails to explain how the 10-Ks make a quantitative showing of the amount of gross receipts that could be used to calculate a refund.

{¶ 28} The dissent rests its evidentiary argument on a claim that it "seems indisputable [] that most of Jones Apparel's goods were shipped through Ohio to DSW's retail stores in other states." Dissenting opinion, ¶ 43. That may be the case, but the statute places the burden of proving "the amount of the requested refund" and providing supporting documentation squarely on the taxpayer. R.C.

5751.08(A). Simply testifying that one is confident that "at least 80 percent" of the goods ended up outside of Ohio falls well short of the evidentiary showing necessary to prove the amount of the claimed refund. Because Jones Apparel has failed to meet its evidentiary burden, we must affirm the order of the board.

{¶ 29} Moreover, a taxpayer may be allowed to use an alternative method to determine the amount of gross receipts sitused to Ohio for particular types of commercial activity if certain conditions are met. *See, e.g.*, R.C. 5751.033(G) and (I). And any taxpayer may request an alternative situsing method within certain statutory time periods if the situsing provisions of R.C. 5751.033(A) through (H) "do not fairly represent the extent of a person's activity in this state." R.C. 5751.033(J). But none of these alternative methods for the situsing of tangible property are applicable here. We therefore reject Jones Apparel's second proposition of law.

### III. CONCLUSION

{¶ 30} We affirm the Board of Tax Appeals' decision because it correctly determined that Jones Apparel is not entitled to its claimed CAT refund.

Decision affirmed.

_____

**KENNEDY, C.J., joined by FISCHER, J., dissenting.**

{¶ 31} Appellant and cross-appellee, Jones Apparel Group/Nine West Holdings, sold goods to DSW, Inc.; DSW then transported those goods from its sole distribution center in Ohio to its retail stores across the country. Jones Apparel sought a refund of the commercial-activity tax it paid on these sales because the goods had only passed through Ohio. Appellee and cross-appellant, Patricia Harris, Tax Commissioner of Ohio, denied the refund, and the Board of Tax Appeals affirmed. I agree with the majority that there is no "contemporaneous knowledge" requirement in R.C. 5751.033(E). I part ways with the majority, however, because the board erred in denying a refund of the commercial-activity tax that Jones

Apparel paid, and therefore I would reverse the board's decision. The majority does otherwise, so I dissent.

**Situs**

{¶ 32} Initially, it is important to note the tension between today's decision in this case and this court's decision in *VVF Intervest, L.L.C. v. Harris*, 2025-Ohio-5680.

{¶ 33} R.C. 5751.033(E) provides that the situs of the gross receipts from the sale of tangible personal property for purposes of the commercial-activity tax is "the place at which [the] property is ultimately received after all transportation has been completed." But R.C. 5751.033(E) does not stop there—it further states:

> In the case of delivery of tangible personal property by motor carrier or by other means of transportation, the place at which such property is ultimately received after all transportation has been completed shall be considered the place where the purchaser receives the property. For purposes of this section, the phrase "delivery of tangible personal property by motor carrier or by other means of transportation" includes the situation in which a purchaser accepts the property in this state and then transports the property directly or by other means to a location outside this state.

Under the statute, then, the situs of a sale is determined by looking to the place where all transportation of the goods has ended, and that is not Ohio when property is accepted by the purchaser in Ohio but then shipped outside Ohio.

{¶ 34} In this case, Jones Apparel's goods were transported into Ohio, and DSW accepted them in Ohio at its sole distribution center before shipping them to its retail stores outside this State. Applying R.C. 5751.033(E) is easy. All transportation of the goods ended when they were ultimately received at DSW's

stores outside Ohio, so Ohio was not the situs for purposes of the commercial-activity tax. The majority in this case never questions that goods that merely pass through Ohio on their way to their ultimate buyer in other states are not properly sitused in Ohio; it just concludes that "Jones Apparel has not provided documentary evidence that establishes the amount of gross receipts for the merchandise that was actually transported out of Ohio," majority opinion, ¶ 26.

{¶ 35} In *VVF Intervest, L.L.C. v. Harris*, 2025-Ohio-5680, the taxpayer also shipped goods to a distribution center in Ohio. After the taxpayer's goods arrived in this State, the purchaser of the goods sold them to third-party retailers ("second sales") and then the goods were transported to those retailers outside Ohio. *Id.* at ¶ 7-8. This court concluded that those sales must be sitused in Ohio; the goods were initially received in Ohio, and their subsequent sales to third-party retailers, the court said, broke the chain of transportation between the taxpayer and the retailers who ultimately received the goods. *Id.* at ¶ 15, 21.

{¶ 36} In my view, the holding in *VVF Intervest* runs counter to the plain meaning of R.C. 5751.033(E). The key question under R.C. 5751.033(E) is: When has all transportation been completed? The answer is that all transportation has not been completed in Ohio when the purchaser of goods accepts the property in Ohio and then transports it to a location outside Ohio. That occurred both in *VVF Intervest* and in this case. Here, Jones Apparel shipped goods to DSW, and DSW then transported those goods to various locations outside Ohio. The same thing happened in *VVF Intervest*: There, the taxpayer's goods were accepted in Ohio by the purchaser, who then transported them to locations outside Ohio. In both cases, the statute provides that the situs of the sales is not Ohio, and this is true regardless of whether the purchaser ships the goods to its own stores or resells the goods to a third-party. Under the statute, the existence of a "second sale" is irrelevant.

{¶ 37} Consequently, because DSW purchased goods from Jones Apparel and then shipped those goods to DSW's retail stores outside Ohio, Ohio is not the situs for purposes of the commercial-activity tax.

### Contemporaneous Knowledge

{¶ 38} The tax commissioner asserts that when a taxpayer sells items of tangible personal property, receipts from those sales must be sitused to Ohio unless the taxpayer produces records contemporaneous to the taxpayer's sales reflecting knowledge that those items will ultimately be delivered outside Ohio. The majority correctly rejects this argument, *see* majority opinion at ¶ 20, because there is no contemporaneous-knowledge requirement in R.C. 5751.033(E).

### The Evidentiary Question

{¶ 39} This case presents an evidentiary question that was not at issue in *VVF Intervest*: Has Jones Apparel proved the amount of gross receipts attributable to goods that passed in and out of Ohio through DSW's distribution center? I would find that it did.

{¶ 40} George Donald Neeman Jr. testified as the vice-president and assistant treasurer of Premier Brands Groups Holdings, L.L.C., formerly known as Nine West Holdings, Inc. (an appellant in this case). Neeman said that he knew with "absolute certainty" that "at least 80 percent of the items" sold to DSW "[were] shipped outside of Ohio." (Neeman actually pegged the number as being closer to 95 percent, but Jones Apparel seeks a refund that corresponds only to 80 percent of the roughly $108 million in sales that it made to DSW.)

{¶ 41} Even though Neeman testified based on his "absolute certainty," the majority characterizes this as simply "an educated guess," majority opinion at ¶ 27. The majority's characterization is not true. Neeman testified to his knowledge about Jones Apparel's marketing and distribution efforts, knowledge he obtained because he had to "understand what occurs [with sales] for book purposes" so that he could identify how these sales should be treated for tax purposes. He stated that

there were various meetings on marketing, logistics, and sales to project what the tax expenses would be. And Neeman was responsible for income- and sales-tax filings, including filings for the commercial-activity tax. He necessarily had to know the states to which sales were attributable in order to do his job. Consequently, it is more than an educated guess that Neeman would know the percentage of Jones Apparel's goods that were sold to DSW and shipped to DSW's retail stores outside Ohio.

{¶ 42} The majority recognizes that "*some* portion of [Jones Apparel's] merchandise that was sold to DSW eventually ended up outside Ohio." (Emphasis in original.) Majority opinion at ¶ 26. That is an understatement. Neeman's testimony establishes that that portion was at least 80 percent. And that percentage is supported by other evidence. For example, based on a sample analysis of the availability of all of Jones Apparel's products in DSW's retail stores between August 2018 and October 2018, Jonathan R. Oeler found that only around 4 percent of all of Jones Apparel's products were available for sale in Ohio's DSW stores. That sampling might have happened outside the time period for which Jones Apparel seeks a refund, but it is consistent with Neeman's testimony that *at least* 80 percent of Jones Apparel's goods passed through Ohio to other states.

{¶ 43} It is uncontroverted—and it seems indisputable—that most of Jones Apparel's goods were shipped through Ohio to DSW's retail stores in other states. During the period for which Jones Apparel seeks a refund, DSW had *only one* distribution center that serviced all the United States, so all Jones Apparel goods that DSW sold passed through that distribution center in Ohio. Yet only 17 or 18 of DSW's 500 stores—less than 4 percent—are in Ohio. Saying that 80 percent of Jones Apparel's goods are sold outside Ohio by DSW is therefore no stretch of the imagination. And that means that Jones Apparel has paid hundreds of thousands of dollars in taxes that it did not owe to the State of Ohio because at least 80 percent of its sales to DSW should not have been subject to the commercial-activity tax.

## Conclusion

{¶ 44} For these reasons, the Board of Tax Appeals was wrong when it concluded that the tax commissioner properly denied a refund of Jones Apparel's commercial-activity-tax payments. Consequently, I would reverse the board's decision. Although I agree with the majority that there is no contemporaneous-knowledge requirement in R.C. 5751.033(E), the majority errs when it upholds the board's decision. Therefore, I dissent.

_____

Reed Smith, L.L.P., and Paul E. Melniczak, for appellant and cross-appellee.

Dave Yost, Attorney General, and Daniel G. Kim, Assistant Attorney General, for appellee and cross-appellant.

Dentons, Bingham, Greenebaum, L.L.P., Mark A. Loyd, and Bailey Roese; and Tony Long, urging reversal for amicus curiae, Ohio Chamber of Commerce.

_____